[No. B208192. Second Dist., Div. Eight. May 26, 2009.]

JOHN VAUGHN, JR., Plaintiff and Appellant, v.
LJ INTERNATIONAL, INC., et al., Defendants and Respondents.

**COUNSEL**

Johnson Bottini, Frank J. Johnson, Francis A. Bottini, Brett M. Weaver and Derek J. Wilson for Plaintiff and Appellant.

Morrison & Foerster, Dan Marmalefsky and Saro Balian for Defendants and Respondents.

**OPINION**

O'NEILL, J.[*]—A shareholder of a publicly traded corporation filed a derivative action in California alleging breaches of fiduciary duty by corporate officers and directors. The international business, a fine jewelry company incorporated in the British Virgin Islands, has no other connection to that jurisdiction. The company employs 3,000 people at its manufacturing facility in China. The majority of the company's wholesale revenues are earned in North America, including substantial sales in California, where a few employees are based. The corporate headquarters is in Hong Kong, where all but one

[*]Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

of the company's directors reside; the sole exception lives in Colorado. The shareholder-plaintiff apparently does not reside in California, but part of the basis for the action is the issuance in Los Angeles of allegedly false and misleading financial statements.

A British Virgin Islands statute requires approval from the high court of that jurisdiction before a shareholder may sue derivatively. Here we hold that such approval was required before the instant California lawsuit could proceed. Because the plaintiff had no such approval, the trial court properly sustained defendants and respondents' demurrer without leave to amend.

## FACTUAL AND PROCEDURAL HISTORY

The following summary is gleaned from the complaint, as well as other sources of which we have taken judicial notice at the request of the parties.[1]

Defendant and respondent LJ International, Inc. (LJI), is a designer and distributor of fine jewelry which is listed and traded only on the NASDAQ National Exchange (National Association of Securities Dealers Automated Quotations). It services wholesale customers in Japan and throughout North America and Western Europe, and has a growing wholesale and retail presence in China. Prior to the time this case arose, most of LJI's sales were in North America and its functional currency was the United States dollar.[2]

LJI is incorporated in the British Virgin Islands (BVI), but its principal executive office is located in Hong Kong, where its 130 full-time employees include approximately 100 management and executive staff. All but one of LJI's directors and officers reside in Hong Kong.[3] The company's 143,000-square-foot production facility is located in Shenzhen, China, where it employees about 3,000 people. LJI's only full-time employees outside Asia are three people based in Los Angeles.[4]

---

[1] Both parties' unopposed motions for judicial notice are hereby granted. Appellants' objections voiced for the first time at oral argument came too late.

[2] In a "Form 20F" report to the United States Securities and Exchange Commission filed in December 2007, LJI reported that North American sales had accounted for 72 percent of its business in 2005 and 62 percent in 2006.

[3] The sole exception is respondent Andrew Bernstein, who lives in Colorado. Mr. Bernstein is a director and the company's outside counsel in the United States. LJI's Hong Kong-based directors had not yet been served by the time of the demurrer that is the subject of this appeal.

[4] As to the Los Angeles facility, the complaint alleges that LJI is "Hong Kong and Los Angeles-based," and that defendants "generated their significant United States' sales from the Company's operations in Los Angeles." By contrast, among the judicially noticed documents is a February 29, 2008 declaration by LJI's chief operating officer stating that the Los Angeles facility is rented workspace which is not its corporate headquarters or principal place of

On October 10, 2007, plaintiff and appellant John Vaughn, Jr., filed the instant derivative complaint against LJI and its directors.[5] Appellant asserted breaches of fiduciary duty and other misconduct by the directors based on reports issued between November 2006 and October 2007, which allegedly (1) overstated the company's 2005 and 2006 financial results by understating tax liability; (2) falsely projected full profitability by the end of 2007; and (3) misleadingly predicted the company would meet or exceed its goal of opening 100 retail outlets in China before the start of the 2008 Olympic games. Appellant claimed the false statements resulted in company stock increasing from $4.50 per share in January 2007 to $13.15 by May 2007.

The complaint further asserts that in June 2007 the company again misled investors as to the reasons for a delay in the release of its fourth quarter 2006 and first quarter 2007 financial results. When further delays were announced in July 2007, investors began to doubt the reliability of previously reported financial results, and the NASDAQ threatened to "de-list" the company's stock. On September 6, 2007, LJI announced it had not achieved the 2006 financial results it had projected in January and February 2007, and that its 2006 earnings report would be adversely affected by a tax liability. According to the complaint, this news caused the stock price to fall to less than $5 per share.[6]

Respondents' motions claiming lack of personal jurisdiction and forum non conveniens were denied. Respondents demurred on the ground that appellant was not entitled to sue derivatively without leave from the High Court of the British Virgin Islands, as required by section 184C of the British Virgin Islands Business Companies Act of 2004 (BVI Act). The demurrer was sustained with leave to cure and amend. Appellant elected not to seek leave to sue from the BVI High Court; the parties stipulated to dismissal of the action and this timely appeal followed.

## DISCUSSION

### 1. *Standard of Review*

We engage in a de novo review of a sustained demurrer, based on a reasonable interpretation of the complaint which assumes the truth of all

---

business. We will assume the truth of the complaint on this point for purposes of ruling on the demurrer. (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 309 [25 Cal.Rptr.3d 468].)

[5] The instant complaint parallels the allegations in several federal securities fraud class actions that had been filed in September 2007.

[6] Although respondents deny false or misleading statements and contend that LJI's belated 2006 annual report, issued December 28, 2007, belies plaintiff's allegations, our review of a sustained demurrer assumes the truth of the complaint's factual allegations. (*Schuster v. Gardner, supra*, 127 Cal.App.4th at p. 309.)

properly pleaded and judicially noticed facts. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10 [72 Cal.Rptr.3d 112, 175 P.3d 1170]; *Schuster v. Gardner, supra*, 127 Cal.App.4th at p. 311.) Plaintiff bears the burden of proving the trial court erred in sustaining the demurrer. (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 220 [118 Cal.Rptr.2d 187].)

The demurrer raised a choice-of-law issue, i.e., whether, assuming California's jurisdiction to entertain a derivative lawsuit against a business incorporated outside the United States, a "leave to sue" provision of the incorporating jurisdiction is applicable. After setting out the provision at issue, we will address each of appellant's reasons for contending the trial court erred in ruling the provision applicable to the present case.

### 2. *British Virgin Islands Business Companies Act of 2004*

As noted above, the trial court sustained respondents' demurrer on the ground that appellant had not obtained leave to sue from the high court of the British Virgin Islands, where LJI is incorporated. The BVI Act, section 184C, provides:

"184C. (1) Subject to subsection (3), the Court may, on the application of a member of a company, grant leave to that member to [¶] (a) bring proceedings in the name and on behalf of that company; or [¶] (b) intervene in proceedings to which the company is a party for the purpose of continuing, defending or discontinuing the proceedings on behalf of the company.

"(2) Without limiting subsection (1), in determining whether to grant leave under that subsection, the Court must take the following matters into account[:] [¶] (a) whether the member is acting in good faith; [¶] (b) whether the derivative action is in the interests of the company taking account of the views of the company's directors on commercial matters; [¶] (c) whether the proceedings are likely to succeed; [¶] (d) the costs of the proceedings in relation to the relief likely to be obtained; and [¶] (e) whether an alternative remedy to the derivative claim is available.

"(3) Leave to bring or intervene in proceedings may be granted under subsection (1) only if the Court is satisfied that [¶] (a) the company does not intend to bring, diligently continue or defend, or discontinue the proceedings, as the case may be; or [¶] (b) it is in the interests of the company that the conduct of the proceedings should not be left to the directors or to the determination of the shareholders or members as a whole.

"(4) Unless the Court otherwise orders, not less than twenty eight days notice of an application for leave under subsection (1) must be served on the

company and the company is entitled to appear and be heard at the hearing of the application.

"(5) The Court may grant such interim relief as it considers appropriate pending the determination of an application under subsection (1).

"(6) Except as provided in this section, a member is not entitled to bring or intervene in any proceedings in the name of or on behalf of a company."

### 3. *Procedure Versus Substance*

Appellant Vaughn contends BVI Act section 184C has no application here because, as a foreign *procedural* provision, it should not be applied by the forum in which the litigation is prosecuted. (*World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1012 [193 Cal.Rptr. 830]; see also 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 45, p. 115.) Appellant notes that section 184C imposes no liability and creates no cause of action; rather, he argues, because it deals only with the "mode of proceeding by which a legal right is enforced," it is not a substantive provision as defined by *Chavez v. Keat* (1995) 34 Cal.App.4th 1406 [41 Cal.Rptr.2d 72] (*Chavez*). We disagree for the following reasons.

■  BVI Act section 184C by its own terms limits entitlement to sue to those shareholders who have complied with its provisions. Although those provisions do establish what may be called a procedure for compliance, the resulting decision as to presence or absence of standing to bring an action is most appropriately characterized as resolving a substantive right. We are not persuaded that standing to sue is a matter of mere court administration or "mode of proceeding" as argued by appellant. As stated in *Hausman v. Buckley* (2d Cir. 1962) 299 F.2d 696, 701 (*Hausman*):  ■  " 'The words "substantive" and "procedural" . . . are not talismanic. Merely calling a legal question by one or the other does not resolve it . . . .' . . . [Citation.] [¶] Our real inquiry must be directed to the question whether appellants' right to bring this action involves no more than compliance with procedural requirements extraneous to the substance of their claim, or whether it concerns the very nature and quality of their substantive rights, powers and privileges as stockholders . . . . Thus defined, we think it is clear that appellants' position cannot prevail. . . . The issue is not just 'who' may maintain an action or 'how' it will be brought, but 'if' it will be brought."

*Hausman* held that a Venezuelan law requirement that a derivative action be approved by a majority of stockholders was substantive, and therefore applicable in a federal proceeding governed by New York procedural law. As

in *Hausman*, BVI Act section 184C controls the "if" question, and is a substantive provision.

Nothing in the authorities cited by appellant persuades us to the contrary. The abstract formulations of the concepts of procedure and substance cited in appellant's quotations from secondary authorities leave much to be desired as solutions to the present dispute. As noted in *Chavez*, the distinction between procedure and substantive law can be " 'shadowy and difficult to draw' in practice." (*Chavez, supra*, 34 Cal.App.4th at p. 1414, quoting 3 Witkin, Cal. Procedure (3d ed. 1985) Actions § 62, p. 91.) *Chavez* itself is not helpful here, as it involved a much different question: whether California rules concerning proof of punitive damages apply to a federal civil rights action prosecuted in a California court. (*Chavez, supra*, 34 Cal.App.4th at p. 1413.)

Appellant also cites an unpublished Maryland decision which, even were we to consider its reasoning, is distinguishable because it involved a clearly procedural BVI Act requirement that a plaintiff post security for costs.[7] As we have indicated, BVI Act section 184C addresses the substantive issue of standing to sue, rather than an ancillary requirement like security for costs.

Finally, appellant notes that California statutes that require court approval before certain claims may be pleaded[8] have been called "procedural" by the California Supreme Court in *College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 718 [34 Cal.Rptr.2d 898, 882 P.2d 894]. Appellant pulls the terminology out of context, because the issue in *College Hospital* had nothing to do with the difference between procedural and substantive requirements that is at issue in the present case. (*Id.* at p. 709 [issue before the court was the meaning of the phrase "substantial probability" as used in Code Civ. Proc., § 425.13, subd. (a)].) *College Hospital* provides no support for appellant's position here. Appellant also calls our attention to an unpublished federal district court case which excused a federal plaintiff from complying with Civil Code section 1714.10 by classifying it as a procedural rather than substantive requirement.[9] The federal court's reasoning highlights the distinction between BVI Act section 184C and the California statutes under discussion. The California statutes are designed to eliminate groundless accusations of various types at

---

[7] *Standard Reserve Holdings, Ltd. v. Downey* (July 9, 2004, No. 24-C-04-0661) 2004 Md.Cir.Ct. Lexis 17.

[8] Appellant cites Code of Civil Procedure section 425.13 (leave of court required to allege punitive damages against health care professionals); Code of Civil Procedure section 425.14 (leave of court required to allege punitive damages against religious corporations); Civil Code section 1714.10, subdivision (a) (leave of court required to bring claim against attorney for conspiring with client); Business and Professions Code section 17204, as amended in 2004 by Proposition 64 (actual injury required for standing to bring unfair business practice claim).

[9] *Franklin v. Allstate Corp.* (N.D.Cal., July 3, 2007, No. C-06-1909 MMC) 2007 U.S.Dist. Lexis 51332.

the prefiling stage, not to determine standing in a fundamental sense. (See *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 83 [131 Cal.Rptr.2d 777].) Unlike section 184C, they control the type of pleadings that may be filed against attorneys, health care professionals and religious corporations. As stated by another federal court, which was speaking about Civil Code section 425.13, the requirement of a prefiling showing "is essentially a method of managing or directing a plaintiff's pleadings, rather than a determination of substantive rights." (*Jackson v. East Bay Hosp.* (N.D.Cal. 1997) 980 F.Supp. 1341, 1352.)

To the extent that California statutes which require a prefiling prima facie showing may be said to confer standing to bring a claim, we simply disagree with the federal courts' characterization of them as procedural because, as stated above, we view standing to sue as a substantive right. Although prefiling requirements which grant or deny standing might be accurately described as "hybrids," involving both procedure and substance, they must in our view be considered substantive for purposes of the present dispute.

More persuasive, in our view, are cases involving analogous statutory conditions precedent to a shareholder suit, such as *Hausman, supra*, 299 F.2d 696, and cases classifying as substantive a requirement that shareholders make a demand on the board of directors before bringing a derivative action. (See *Kamen v. Kemper Financial Services, Inc.* (1991) 500 U.S. 90, 96–97 [114 L.Ed.2d 152, 111 S.Ct. 1711] ["the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure' "]; *Rales v. Blasband* (Del. 1993) 634 A.2d 927, 932, fn. 7 [quoting *Kamen* and holding that "the demand requirements for a derivative suit are determined by the law of the state of incorporation"].)

Accordingly, the common law "substance versus procedure" analysis does not assist appellant. That being so, we turn to appellant's contentions that choice-of-law principles require California courts to ignore BVI Act section 184C.

### 4. *Choice-of-law Principles*

Although the trial court did not articulate a specific basis for its ruling, respondents' opposition papers relied on the "internal affairs doctrine" as codified in Corporations Code section 2116. That section provides that "The directors of a foreign corporation transacting intrastate business are liable to the corporation, its shareholders, creditors, receiver, liquidator or trustee in bankruptcy for the making of unauthorized dividends, purchase of shares or distribution of assets or false certificates, reports or public notices or other violation of official duty according to any applicable laws of the state or place

of incorporation or organization, whether committed or done in this state or elsewhere. Such liability may be enforced in the courts of this state." We will discuss the internal affairs doctrine and other potentially applicable choice-of-law principles raised by the parties.

A. *The internal affairs doctrine and Corporations Code section 2116*

■ "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders— because otherwise a corporation could be faced with conflicting demands." (*Edgar v. MITE Corp.* (1982) 457 U.S. 624, 645 [73 L.Ed.2d 269, 102 S.Ct. 2629], quoted with approval in *Havlicek v. Coast-to-Coast Analytical Services, Inc.* (1995) 39 Cal.App.4th 1844, 1854 [46 Cal.Rptr.2d 696] (*Havlicek*).) "States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care." (*Atherton v. FDIC* (1997) 519 U.S. 213, 224 [136 L.Ed.2d 656, 117 S.Ct. 666].)

Corporations Code section 2116 codifies the modern view of the common law doctrine, whereby a court will entertain an action involving the internal affairs of a foreign corporation. With certain exceptions, the law of the state of incorporation applies. (See 9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, § 239, p. 1005; *Friese v. Superior Court* (2005) 134 Cal.App.4th 693, 706 [36 Cal.Rptr.3d 558] ["As applied to directors' liability, section 2116 is a codification of the 'internal affairs doctrine' "].)

Thus, in *State Farm Mutual Automobile Ins. Co. v. Superior Court* (2003) 114 Cal.App.4th 434, 449 [8 Cal.Rptr.3d 56], where policyholders sought to hold defendant State Farm liable for not declaring a dividend, the internal affairs doctrine required California courts to apply the law of Illinois, where State Farm is incorporated. By contrast, in *Friese v. Superior Court, supra,* 134 Cal.App.4th at page 706, the court held that Corporations Code section 2116 could not be used as a shield against a suit by a bankrupt corporation's trustee alleging liability of former officers and directors for insider trading in violation of California's Corporate Securities Law of 1968. The corporation involved in *Friese,* although incorporated in Delaware, had its headquarters and principal place of business in San Diego, and the securities transactions at issue took place in California. (*Friese,* at p. 699.) The Court of Appeal rejected the defense claim that Delaware securities regulations were applicable, reasoning that securities regulations designed to protect participants in California's securities marketplace are not limited by the internal affairs doctrine. (*Id.* at p. 698.)

The Witkin treatise makes note that the internal affairs doctrine is some-times ignored where, despite foreign incorporation, a business's books, records and principal operations are located in California. (9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 239, p. 1006.) Clearly, that line of authority is inapplicable in the present case. Even accepting at face value the complaint's allegations concerning LJI's Los Angeles operations, it cannot be said that LJI's principal operations, let alone its books and records, are located in California or elsewhere in the United States.

Whether a permission to sue provision is governed by the internal affairs doctrine as codified in Corporations Code section 2116 appears to be a question of first impression in California. The plain meaning of the broad statutory language strongly supports the position of respondents and the trial court's ruling. Appellant's contention that BVI Act section 184C, by divesting a corporation of authority to control litigation, operates outside a company's internal affairs, misses the point. BVI Act section 184C regulates the liability of directors to shareholders for violations of official duty, exactly as described by section 2116.

Appellant's reply brief argument, that BVI Act section 184C was intended to govern only lawsuits filed in the British Virgin Islands, is unsupported and ignores the reality that most businesses incorporated in the BVI are unlikely to be sued there. Like Delaware and other similar locations, the BVI is used as a place of incorporation by businesses not located there for a variety of reasons, including enhancing confidence that a predictable legal framework will govern the relationship between investors and the corporation. This is a salutary purpose. As the United States Supreme Court has stated, "Th[e] beneficial free market system depends at its core upon the fact that a corporation—except in the rarest situations—is organized under, and gov-erned by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation." (*CTS Corp. v. Dynamics Corp. of America* (1987) 481 U.S. 69, 90 [95 L.Ed.2d 67, 107 S.Ct. 1637].)

Further, federal circuit courts have resolved very similar issues in respon-dents' favor. In *Batchelder v. Kawamoto* (9th Cir. 1998) 147 F.3d 915, a share-holder in Honda of Japan attempted to bring a derivative action in California. The court found his standing to sue was governed by the law of Japan under the terms of an applicable deposit agreement. (*Id.* at p. 920.) The court then analyzed the case under the internal affairs doctrine, assuming the deposit agreement was inapplicable. The court stated: "Under the 'internal affairs' doctrine, the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the company is incorporated. See *Hausman v. Buckley*[, *supra*], 299 F.2d 696, 702 (2d Cir. 1962) . . . ." (*Ibid.*, citations omitted.) In *Hausman*, the Second Circuit

applied New York law in a diversity case, and concluded that a shareholder's standing to sue derivatively was governed by the law of the country of incorporation (Venezuela) pursuant to the internal affairs doctrine. (*Hausman*, at pp. 702–703.)

■ Seeking to avoid the seemingly straightforward application of these principles to the present matter, appellant first contends that BVI Act section 184C "in no way governs the relationship between LJI and its shareholders, directors, officers or agents." We disagree. Section 184C, in establishing a condition precedent to the right of a shareholder to derivatively sue corporate directors on behalf of the company, most definitely regulates the internal affairs of the corporation.

Appellant next incorrectly cites *Pratt v. Robert S. Odell & Co.* (1942) 49 Cal.App.2d 550, 559 [122 P.2d 684] (*Pratt*), for the proposition that Civil Code former section 366, governing loans and obligations incurred by corporate officers,[10] applied to a foreign corporation doing business in California. In fact, *Pratt* held the *exact opposite*. The decision applied Civil Code former section 412, the substantively identical predecessor to current Corporations Code section 2116, i.e., the internal affairs doctrine. The court of appeal held the law of the state of incorporation (Delaware) should be applied by California courts to an action by minority shareholders seeking restitution from corporate officers and directors for unlawful expenditures. (*Pratt, supra*, 49 Cal.App.2d at pp. 553, 559–561.) Thus, when accurately summarized, *Pratt* supports respondents' position in the present matter.

■ We reach a similar conclusion here. Pursuant to Corporations Code section 2116, BVI Act section 184C, requiring approval of the BVI High Court, governs appellant Vaughn's standing to bring his present derivative claims against the corporation and its directors in California.

### B. *The Restatement Second of Conflict of Laws*

■ In applying the internal affairs doctrine, the Witkin treatise and many California cases rely heavily on the Restatement Second of Conflict of Laws (Restatement). (See, e.g., 9 Witkin, Summary of Cal. Law, *supra*, Corporations, §§ 238–239, pp. 1005–1006; *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464 [11 Cal.Rptr.2d 330, 834 P.2d 1148]; *State Farm Mutual Automobile Ins. Co. v. Superior Court, supra*, 114 Cal.App.4th at p. 443.) Section 302 of the Restatement provides: "§ 302. Other Issues with Respect to Powers and Liabilities of a Corporation [¶] (1) Issues

---

[10] Presently, see Corporations Code sections 315 and 316.

involving the rights and liabilities of a corporation, other than those dealt with in § 301,[11] are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6. [¶] (2) The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied."

Restatement, section 6, in turn, provides: "6. Choice-of-Law Principles [¶] (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. [¶] (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include [¶] (a) the needs of the interstate and international systems, [¶] (b) the relevant policies of the forum, [¶] (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, [¶] (d) the protection of justified expectations, [¶] (e) the basic policies underlying the particular field of law, [¶] (f) certainty, predictability and uniformity of result, and [¶] (g) ease in the determination and application of the law to be applied."

With reference to Restatement, section 6, subdivision (1), we have already discussed California's codification of the internal affairs doctrine in Corporations Code section 2116. Even putting that statutory directive aside, the factors in Restatement, section 6, subdivision (2) favor applying BVI law to the present case. LJI is a publicly traded, international corporation in which California has no extraordinary interest. Appellant has demonstrated no significant California public policy that will be offended should we affirm the trial court's ruling. Appellant has not argued that any jurisdiction other than California has a compelling interest in determining the present issues pursuant to its law. Factors (a), (d), (f) and (g) in section 6 of the Restatement heavily favor applying the law of the state of incorporation in the present case. Those factors are addressed in comment e to Restatement, section 302, page 309: "Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law. To the extent that they think about the matter, these persons would usually expect that their rights and duties with respect to the corporation would be determined by the local law of the state of incorporation. This state is also easy to identify, and thus the value of ease of application is attained when the local law of this state is applied."

---

[11] Section 301 deals with a corporation's "Rights Against and Liabilities to Third Person," a topic not relevant to the instant case.

Further, comment g to Restatement, section 302, pages 311–312 states, in part: "[I]n the absence of an explicitly applicable local statute, the local law of the state of incorporation has almost invariably been applied. This result furthers the choice-of-law factors of certainty, predictability and uniformity of result, ease in the application of the law to be applied and, at least on occasion, protection of the justified expectations of the parties. This last factor is mentioned because parties who deal with a corporation will often expect, to the extent that they think about the matter, that any issue that may arise between them and the corporation will be determined by the local law of the state of incorporation."

We thus conclude that the modern view of the internal affairs doctrine, whether viewed through the prism of the Restatement or that of Corporations Code section 2116, favors application of the law of the incorporating jurisdiction in the present case.

### C. *Governmental interest analysis*

■ Appellant asserts error in the trial court's failure to apply a "governmental interest analysis," which he argues would preclude application of BVI Act section 184C. That analysis resolves substantive choice-of-law issues by balancing the interests of the involved states and parties. (See *Tucci v. Club Mediterranee* (2001) 89 Cal.App.4th 180, 188–194 [107 Cal.Rptr.2d 401] [applying governmental interest analysis in a tort case, and holding that the law of the Dominican Republic governed].)

However, the governmental interest approach has been applied almost exclusively in tort and contract cases, and occasionally to statute of limitations issues. (3 Witkin, Cal. Procedure, *supra*, Actions § 44, p. 113.) Only dictum supports appellant's claim that California courts might utilize this approach in a derivative action against the directors of a foreign corporation. In *Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1621 [19 Cal.Rptr.2d 459], a derivative action was brought against a Delaware corporation which was headquartered in and did "substantially all of its business in" California. The defense argued that Delaware law regarding a prefiling demand requirement should apply pursuant to the internal affairs doctrine, but made no showing of a difference between California and Delaware law. (*Ibid.*) The court's decision to apply California law was therefore based on the lack of a showing of a true conflict of law rather than rejection of the internal affairs doctrine. (*Ibid.*) Similarly, *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1104 [72 Cal.Rptr.3d 129, 175 P.3d 1184], involved a Delaware corporation based in California. The case presented the question whether a derivative action could

be maintained after the plaintiff lost his status as a stockholder due to a merger. The Supreme Court noted that if there was a conflict between Delaware and California laws on the standing issue, "we must then analyze the governmental interests of the two states, including the effect of the internal affairs doctrine, to determine which state's law ought to apply." (*Id.* at p. 1107.) However, the court never reached the merits of the conflict issue because it found no substantial difference between the laws of the two states. (*Id.* at p. 1119.) Further, the reference to the internal affairs doctrine in the passage just cited defeats appellant's contention that *Grosset* "mandated" application of the governmental interest approach to a shareholder action.

Thus, appellant has cited no authority *actually applying* the governmental interest analysis to resolve choice of law in a derivative action against the directors of a foreign corporation. He relies heavily on *Havlicek, supra*, 39 Cal.App.4th 1844. But that case did not involve the liability of directors to the corporation for alleged breaches of fiduciary duties; rather, it involved a director's right of access to books and records of a company incorporated in Delaware. Thus, Corporations Code section 2116 was not implicated, and the Court of Appeal found the internal affairs doctrine inapplicable because no violation of Delaware law would result. (39 Cal.App.4th at p. 1854.)

We again find *Hausman, supra*, 299 F.2d 701, to be instructive. In the course of applying New York law in a diversity case, the Second Circuit noted that, although New York had formulated a choice-of-law test similar to the governmental interest analysis (called "center of gravity"), it had not been applied to corporate stockholder litigation. Consequently, the court invoked the traditional internal affairs test and found that the law of the state of incorporation applied to a question of a stockholder's standing to bring a derivative action. (*Id.* at p. 704.)

█ Finally, a close look at the analysis involved in the governmental interest approach reveals that it is inapposite to a shareholder derivative action involving the posture of the present case. The required analysis consists of three steps, as summarized in *Havlicek*: "First, we determine whether the two concerned states have different laws. Second, we consider whether each state has an interest in having its law applied to this case. Finally . . . we apply the law of the state whose 'interests would be more impaired if its policy were subordinated to the policy of the other state.' [Citations.]" (*Havlicek, supra*, 39 Cal.App.4th at p. 1851.) In a shareholder case where the jurisdiction of incorporation has little if any other contact with the company, this test will invariably result in the application of California law. That predictable result ignores the factors identified by the Restatement

which, as noted earlier in this opinion, are of great significance to corporate directors and investors who do business across state and international borders. We agree with respondents' similar argument that the protective purpose of the governmental interest approach is inapplicable to a derivative action, which is brought on behalf of the corporation rather than the individual citizens and shareholders of the forum state.

Thus, the governmental interest choice-of-law test is inapplicable to the present case.

### 5. English Common Law

Appellant makes his last stand behind the bulwark of the United Kingdom. He contends that, even if BVI law applies, BVI Act section 184C is inapplicable under the rule announced 166 years ago in *Foss v. Harbotle* (Eng. 1843) 2 Hare 461, which is still sometimes invoked in cases involving semisovereign British Overseas Territories. With certain exceptions, the rule allows derivative claims only where a simple majority of shareholders *could not* ratify the conduct on which the suit is based. (*In re Tyco Intern., Ltd.* (D.N.H. 2004) 340 F.Supp.2d 94, 98.) Appellant contends he qualifies for, and has pleaded, an exception to the *Foss* rule called "fraud on the minority," which was recently explained and applied to a BVI corporation in *Seghers v. Thompson*, an unpublished decision of a federal district court.[12] He adds that cases involving British Overseas Territories other than BVI also support his position, citing *Tyco*, which involved a Bermuda corporation, and *Winn v. Schafer* (S.D.N.Y. 2007) 499 F.Supp.2d 390, 396, involving a Cayman Islands corporation.

However, none of the cited cases discusses BVI Act section 184C or any similar statute. *Seghers*, the only one involving a BVI corporation, was based on conduct in 2002, two years before section 184C was enacted as part of the 2004 BVI Act. (*Seghers v. Thompson, supra*, 2006 U.S.Dist. Lexis 71103 at pp. *4–*8.) The applicable law in *Seghers* was the predecessor 1984 BVI Act, which contained no provision concerning shareholder derivative actions. It is therefore not surprising that, with no applicable statute involved, the parties in *Seghers* agreed the case should be analyzed according to British common law. (2006 U.S.Dist. Lexis 71103 at p. *11.)

Here, by contrast, the 2004 BVI Act, including section 184C, is applicable. As a statute specifically addressing shareholder derivative actions, it obviates the need to resort to English common law to resolve the present issue.

---

[12] *Seghers v. Thompson* (S.D.N.Y., Sept. 27, 2006, No. 06 Civ. 308 (RMB) (KNF)) 2006 U.S.Dist. Lexis 71103.

## DISPOSITION

The trial court's ruling sustaining the demurrer without leave to amend and the ensuing dismissal are affirmed. Costs on appeal are awarded to respondents.

Rubin, Acting P. J., and Bigelow, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 19, 2009, S174392. Kennard, J., was of the opinion that the petition should be granted.