[No. B239042. Second Dist., Div. Two. May 23, 2012.]

ALEXANDER LIDOW, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
INTERNATIONAL RECTIFIER CORP., Real Party in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part III of the Discussion.

## Counsel

Sullivan & Cromwell, Robert A. Sacks, Adam S. Paris, Diane L. McGimsey and Edward E. Johnson for Petitioner.

No appearance for Respondent.

Robins, Kaplan, Miller & Ciresi, Roman M. Silberfeld, Michael A. Geibelson and Rebecka M. Biejo for Real Party in Interest.

OPINION

**BOREN, P. J.**—The novel question presented in this case is whether, under a conflict of laws principle known as the internal affairs doctrine, California law or foreign law applies to a claim brought by an officer of a foreign corporation for wrongful termination in violation of public policy. We hold that under the circumstances alleged here, specifically where a foreign corporation has removed or constructively discharged a corporate officer in retaliation for that person's complaints of possible harmful or unethical activity, California law applies.

## BACKGROUND

The parties do not dispute the following facts for the purposes of summary adjudication:

Petitioner, Alexander Lidow, has a Ph.D. in applied physics. Real party in interest, International Rectifier Corporation (IR), is incorporated in Delaware and based in El Segundo, California. IR is a semiconductor company founded by petitioner's father. Petitioner began working for IR in 1977 after graduating from Stanford University. Petitioner became a member of IR's board of directors (Board) in 1994, co-chief executive officer (CEO) in 1995, and sole CEO in 1999. At no point in time did petitioner have a written employment contract with IR. IR's bylaws provided at all relevant times that the corporation's officers (including the CEO) "shall be chosen annually by, and shall serve at the pleasure of, the Board, and shall hold their respective offices until their resignation, removal, or other disqualification from service." Removal of an officer, according to IR's bylaws, may be "with or without cause, by the Board at any time."

In early 2007, IR commenced an internal investigation after accounting irregularities surfaced at IR's subsidiary in Japan. In late August 2007, the Board placed petitioner on paid administrative leave. Prior to being placed on administrative leave, petitioner had not received any negative criticisms or negative reviews about his performance as CEO. Petitioner stepped down as CEO and Board member in October 2007 pursuant to a negotiated separation agreement entered into by petitioner and IR. Although the separation agreement did not include a release of liability for either party, it did specify that petitioner's resignation was "[a]t the Company's request," and that petitioner had signed the agreement "freely and voluntarily."

Approximately 18 months later, petitioner sued IR in superior court, alleging causes of action for (1) breach of contract; (2) wrongful termination in violation of public policy; (3) breach of employment contract; (4) failure to pay outstanding wages at the time of termination (Lab. Code, §§ 201, 203); (5) failure to make personnel records available in a timely manner (Lab. Code, §§ 226, 1198.5); (6) tortious interference; and (7) unfair business practices (Bus. & Prof. Code, § 17200). After IR prevailed on several pleading motions, only petitioner's second, fourth, and fifth causes of action remained.

IR moved for summary adjudication of petitioner's cause of action for wrongful termination on three grounds: First, pursuant to the "internal affairs doctrine," Delaware law governed petitioner's wrongful termination claim. Under Delaware law, a CEO serves at the pleasure of the corporation's board of directors and is barred from bringing a wrongful termination claim (unless authorized by specific statutory enactments) as a matter of law. Second, to bring a claim for wrongful termination, a plaintiff must either be terminated or constructively discharged. Here, petitioner freely and voluntarily resigned as CEO. Third, even assuming IR had removed or constructively discharged petitioner, IR had legitimate, nonretaliatory reasons for doing so.

Petitioner opposed the motion for summary adjudication, arguing the following: First, the circumstances underlying his wrongful termination claim did not constitute an internal affair of the corporation, and thus California law (and not Delaware law) governed his claim. Second, petitioner had raised a triable issue of material fact as to whether he was constructively discharged. Third, petitioner had raised a triable issue of material fact as to whether IR had retaliated against him for complaints he raised about the treatment of Japanese employees during the investigation into the alleged accounting irregularities.

The superior court granted IR's motion for summary adjudication on the first ground raised by IR. It reasoned that pursuant to the internal affairs doctrine, Delaware law applied to petitioner's wrongful termination claim, and under Delaware law, petitioner "could be removed without the threat of litigation arising from a wrongful termination claim (except a claim based upon a subsequent statutory enactment such as one relating to discrimination of which there is no allegation or proof before this Court)."

Petitioner timely filed the present petition for writ of mandate challenging the superior court's order. After considering IR's preliminary opposition to the petition, this court issued an alternative writ of mandate directing the

superior court to set aside its order granting summary adjudication in favor of IR, or show cause why this court should not issue a peremptory writ of mandate ordering the superior court to do so. The superior court elected not to set aside its order. As a result, this court set the matter for argument and received a formal return from IR and reply from petitioner.

Based on our de novo review, we conclude the superior court erred by granting summary adjudication in favor of IR. Accordingly, we direct the superior court to vacate the order in question and to enter a new order denying IR's motion for summary adjudication of petitioner's cause of action for wrongful termination in violation of public policy.

## STANDARD OF REVIEW

The standard of review for an order granting or denying a motion for summary judgment or adjudication is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) The trial court's stated reasons for granting summary relief are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].)

A party moving for summary adjudication "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law" on a particular cause of action. (*Aguilar, supra*, 25 Cal.4th at p. 850, fn. omitted.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*, fn. omitted.) "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Ibid.*)

## DISCUSSION

I. *Overview*

In the published portion of this decision, we hold that a claim for wrongful termination in violation of public policy brought by an officer of a foreign

corporation falls outside the scope of the internal affairs doctrine, and thus is governed by California law.[1] In the unpublished portion of this decision, we address IR's alternative grounds for summary adjudication.

## II. *Internal Affairs Doctrine*

### A. *Allegations*

As related to the claim for wrongful termination in violation of public policy, petitioner alleged the following events took place:[2]

In October 2006, IR's internal finance department raised concerns that possible accounting improprieties were taking place at the corporation's subsidiary in Japan. In response, the Board's audit committee, which was comprised of all the Board members except for petitioner and his father, and IR's general counsel hired the law firm of Sheppard Mullin Richter & Hampton LLP (Sheppard Mullin) to conduct an investigation into the possible accounting improprieties. Sheppard Mullin had a long-standing relationship with the general counsel and had advised him on past occasions when he had received negative performance reviews from petitioner.

Sheppard Mullin outsourced the accounting investigation to a private company made up predominantly of ex-law enforcement officers from the United States and the United Kingdom. The investigators conducted interrogations during which they physically intimidated employees at IR's Japanese subsidiary, lied to these employees in an attempt to coerce inconsistent statements, and failed to advise these employees that they could, or should, retain independent counsel, despite the possibility that the employees could be criminally prosecuted based on the statements they gave during the interrogations. As a result of the investigators' aggressive and coercive tactics, employees at the Japanese subsidiary filed multiple complaints and threatened to resign in mass numbers. Productivity at the Japanese subsidiary came to a halt.

---

[1] For the purposes of this opinion, we assume, without deciding, that the policies implicated here satisfy the requirements to support a tortious discharge claim. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889–890 [66 Cal.Rptr.2d 888, 941 P.2d 1157].) This issue was neither raised nor briefed by the parties in the petition, return, or reply.

[2] We emphasize that these are petitioner's allegations and for this reason entirely one-sided. At this juncture, a trier of fact has made no findings about the truth or falsity of these allegations, and our discussion of these allegations should not be interpreted as lending any credibility to them.

Concerned about the deteriorating situation, petitioner travelled to Japan in order to convince the remaining employees to cooperate with the investigation, and to ensure, that going forward, the employees were treated with fairness and respect. Petitioner called for the implementation of protocols that would restore integrity to the investigation process and stem the loss of Japanese personnel. At the same time, petitioner spoke out against the tactics used by the investigators, and criticized how Sheppard Mullin, the general counsel, and the audit committee were overseeing the investigation. Additionally, petitioner criticized the audit committee for failing to control the mounting legal and accounting fees associated with the investigation, which were already in the millions of dollars.

When news broke that IR was investigating possible accounting improprieties at its Japanese subsidiary, a class action securities lawsuit was filed against IR. IR's general counsel decided to retain Sheppard Mullin to defend the lawsuit. Petitioner protested Sheppard Mullin's retention, complaining that it would be a conflict of interest for Sheppard Mullin to defend a lawsuit based on accounting irregularities and to conduct a purportedly independent investigation into the irregularities at the same time.

Because of petitioner's complaints about the manner in which employees were being treated in Japan, his critical remarks about how the investigation was progressing, and his protestations over Sheppard Mullin's retention to defend the securities lawsuit, petitioner became a target of Sheppard Mullin, the general counsel, and the audit committee. Approximately 10 months after the investigation commenced, Sheppard Mullin issued a report to the audit committee implicating petitioner in the alleged accounting irregularities. According to the report, which petitioner claims is pure conjecture, petitioner either ordered employees at the Japanese subsidiary to create false accounting documents, or knew that the employees were creating false accounting documents and turned a blind eye to the fraud.

Based on the report, the audit committee, which was now acting as the de facto Board, placed petitioner on administrative leave without giving him an opportunity to respond to the charges. Shortly after the audit committee placed petitioner on administrative leave, it informed him that if he did not resign as CEO in seven days, he would be removed. Petitioner entered in a separation agreement with IR wherein he agreed to step down as CEO and Board member at IR's request.

B. *Legal Framework*

■ " 'The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a

corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders— because otherwise a corporation could be faced with conflicting demands.' (*Edgar v. MITE Corp.* (1982) 457 U.S. 624, 645 [73 L.Ed.2d 269, 102 S.Ct. 2629] [citation].)" (*Vaughn v. LJ Internat., Inc.* (2009) 174 Cal.App.4th 213, 223 [94 Cal.Rptr.3d 166] (*Vaughn*).) " 'States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care.' " (*Vaughn, supra*, at p. 223.)

"Matters falling within the scope of the [internal affairs doctrine] and which involve primarily a corporation's relationship to its shareholders include steps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares." (Rest.2d Conf. of Laws, § 302, com. a, p. 307; see *State Farm Mutual Automobile Ins. Co. v. Superior Court* (2003) 114 Cal.App.4th 434, 442 [8 Cal.Rptr.3d 56] (*State Farm*) [adopting the Restatement's definition of "internal affairs"].) "[I]t would be impractical to have matters of the sort mentioned in the previous paragraph, which involve a corporation's organic structure or internal administration, governed by different laws." (Rest.2d Conf. of Laws, § 302, com. e, p. 310.)

█ " 'The policy underlying the internal affairs doctrine is an important one . . . : "Under the prevailing conflicts practice, neither courts nor legislatures have maximized the imposition of local corporate policy on foreign corporations but have consistently applied the law of the state of incorporation to the entire gamut of internal corporate affairs.' " (*State Farm, supra*, 114 Cal.App.4th at p. 443.) Applying local law to the internal affairs of a foreign corporation " ' "produce[s] inequalities, intolerable confusion, and uncertainty, and intrude[s] into the domain of other states that have a superior claim to regulate the same subject matter." ' " (*Id.* at p. 444.)

There is, however, a vital limitation to the internal affairs doctrine: "The local law of the state of incorporation will be applied . . . *except where, with respect to the particular issue, some other state has a more significant relationship . . . to the parties and the transaction . . . .*" (Rest.2d Conf. of Laws, § 309, italics added.) Indeed, "[t]here is no reason why corporate acts" involving "the making of contracts, the commission of torts and the transfer of property" "should not be governed by the local law of different states." (*Id.*, § 302, com. e, p. 309.)

The issue of whether the termination of a corporate officer for reasons that allegedly violate public policy falls within the scope of a corporation's internal affairs is one of first impression. For guidance, we turn to those cases in which courts of this state have applied, or not applied, the internal affairs doctrine to particular claims.

In *Western Air Lines, Inc. v. Sobieski* (1961) 191 Cal.App.2d 399 [12 Cal.Rptr. 719] (*Western*), the plaintiff, a Delaware corporation with its principal place of business in California, sought to amend its bylaws to eliminate cumulative voting rights for its shareholders. California's Commissioner of Corporations took the position that this proposed change in voting rights would constitute a "sale" of securities under California law, and thus petitioner would have to apply for and obtain a permit authorizing such action from the commissioner.[3] After petitioner filed the requisite application, the commissioner declined to issue a permit, finding that the proposed elimination of cumulative voting "would be '. . . unfair, unjust and inequitable to the great number of security holders residing in California.' " (191 Cal.App.2d at p. 403.)

The plaintiff sought review of the commissioner's decision through a petition for writ of administrative mandate before the superior court. The superior court granted the petition and ruled that the commissioner had acted without jurisdiction because the amendment of the plaintiff's articles of incorporation was an "internal affair" of the corporation and its shareholders. (*Western, supra*, 191 Cal.App.2d at p. 405.) The Court of Appeal reversed the superior court's order. It reasoned, in part, that " 'ordinarily speaking the issuance of capital stock or the stock structure of a corporation is an internal affair, yet the issuance and sale of stock within a state other than that of its organization may be regulated *in order to protect the residents and citizens of the former state.*' " (*Id.* at p. 410, italics added.)

In *Friese v. Superior Court* (2005) 134 Cal.App.4th 693 [36 Cal.Rptr.3d 558] (*Friese*), the plaintiff, the successor in interest to a Delaware corporation headquartered in California, sued a group of former directors and officers under Corporations Code section 25502.5 (part of California's Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.)), a statute that gives an issuer of securities standing to sue its own directors and officers for insider trading. The former directors and officers demurred to the plaintiff's complaint, arguing that because their actions violated internal duties owed to the

---

[3] At the time, Corporations Code section 25500 provided that " 'No company shall sell any security of its own issue . . . until it has first applied for and secured from the commissioner a permit authorizing it to do so.' " (*Western, supra*, 191 Cal.App.2d at p. 401, fn. 2.) Under section 25510 of the same code, the commissioner could refuse to issue the permit " 'if in his opinion the [planned sale was] not fair, just, or equitable to all security holders affected.' " (*Western, supra*, at p. 401, fn. 3.)

corporation, Delaware law applied under the internal affairs doctrine. And because Delaware did not have a statute analogous to Corporations Code section 25502.5, they were entitled to judgment as a matter of law. (*Friese, supra,* at p. 698.) The superior court agreed and sustained the demurrer.

The Court of Appeal granted writ relief. It explained that "California's corporate securities laws are designed to protect participants in California's securities marketplace and deter unlawful conduct which takes place [in California]." (*Friese, supra,* 134 Cal.App.4th at p. 698; see *id.* at p. 710 ["California's corporate securities regulation scheme . . . serves broad public interests rather than the more narrow interests of a corporation's shareholders."].) Although the scope of a director's or officer's duties to a corporation is ordinarily an internal affair of that corporation, the appellate court reasoned that where the conduct in question also implicates the broader public interest of securities regulation, California has a greater stake in applying its law (as opposed to Delaware law) to maintain a fair and equitable marketplace for its shareholder citizens. Thus, the appellate court concluded, the internal affairs doctrine could not be used to shield the directors and officers from liability for insider trading. (134 Cal.App.4th at pp. 706–708.)

The Court of Appeal's decisions in *Western* and *Friese* serve as instructional contrasts to the decisions in *State Farm, supra,* 114 Cal.App.4th 434, and *Vaughn, supra,* 174 Cal.App.4th 213. In *State Farm,* insurance policyholders residing in California sued an insurance company incorporated and headquartered in Illinois, alleging that the company's board of directors did not pay promised dividends. The policyholders framed their claim as an alleged breach of contract, and argued that California had an interest in enforcing contracts made in California under California law. The Court of Appeal rejected this argument. It held that the issuance of dividends was strictly an internal corporate affair, regardless of how the policyholders had framed their claim, and thus Illinois law applied. (*State Farm, supra,* at p. 446 ["Simply put, the policyholders challenge a decision of the board of directors that falls within State Farm's internal affairs. The causes of action in the complaint, though labeled in common terms—breach of contract and breach of the covenant of good faith and fair dealing—involve 'matters *peculiar* to the relationships among or between the corporation and its current officers, directors, and shareholders . . . .' "].)

In *Vaughn, supra,* 174 Cal.App.4th 213, the defendant corporation, LJ, was incorporated in the British Virgin Islands (BVI), headquartered in Hong Kong, and had a "few employees" based in California. (*Id.* at p. 216.) A

shareholder (who did not reside in Cal.) brought a derivative suit against the corporation based on allegedly false and misleading financial statements that it had issued in Los Angeles. The corporation demurred to the complaint, arguing that BVI law applied under the internal affairs doctrine, and that the shareholder had failed to comply with a BVI statute requiring approval from the high court of that jurisdiction before a shareholder could sue derivatively. (*Id.* at p. 217.) The superior court sustained the demurrer without leave to amend, and the Court of Appeal affirmed, reasoning that the BVI statute in question "establish[ed] a condition precedent to the right of a shareholder to derivatively sue corporate directors on behalf of the company," which "most definitely [implicated] the internal affairs of the corporation." (*Id.* at p. 225.) The appellate court noted that California had "no extraordinary interest" in an international corporation that was not headquartered in the state, and the shareholder had failed to show that a "significant California public policy" would "be offended" if he were forced to bring the derivative suit under BVI law. (*Id.* at p. 226.)

(3)  What we learn from the decisions in *Friese* and *Western* is that courts are less apt to apply the internal affairs doctrine when vital statewide interests are at stake, such as maintaining the integrity of California security markets and protecting its citizens from harmful conduct. In contrast, what we learn from the decisions in *State Farm* and *Vaughn* is that when less vital state interests are at stake (e.g., whether a foreign corporation headquartered in another state pays promised dividends to its shareholders, or whether the shareholder of a foreign corporation must fulfill certain procedural requirements set before bringing a derivative suit), courts are more apt to apply the internal affairs doctrine.

■  We now turn to the situation presented in this case. Certainly, the removal of a CEO for any number of reasons (e.g., the corporation is not performing well, the CEO did not meet certain financial expectations set by the board of directors) falls within the scope of a corporation's internal governance, thus triggering the application of the internal affairs doctrine. This case, however, presents an entirely different set of allegations. Removing an officer in retaliation for his complaints about possible illegal or harmful activity (e.g., witness intimidation, physical threats to employees, etc.) and breaches of ethical conduct (e.g., defending a client against allegations of accounting irregularities and conducting an independent investigation in the same irregularities) goes beyond internal governance and touches upon broader public interest concerns that California has a vital interest in protecting. (Accord, Rest.2d Conf. of Laws, § 6, subd. (2)(b); *id.*, com. c, p. 12 [under general choice-of-law principles, one factor to consider is the relevant public policies of the forum state].)

At oral argument, counsel for IR relied heavily on *VantagePoint Venture Partners 1996 v. Examen, Inc.* (Del. 2005) 871 A.2d 1108 (*VantagePoint*), a decision issued by the Delaware Supreme Court. The reasoning articulated in that case, however, only supports our conclusion in this case.

*VantagePoint* involved three Delaware entities: Examen, a corporation incorporated in Delaware; VantagePoint, a limited partnership organized under Delaware law, and a Delaware subsidiary of Reed Elsevier Inc. Examen and Reed proposed a merger. VantagePoint, which owned 83 percent of Examen's series A preferred stock, and none of Examen's common stock, wanted to block the proposed merger. Under Delaware law, which makes no distinction between preferred and common stock shareholders when voting for mergers, VantagePoint did not have sufficient shares to block the merger; under California law, VantagePoint did. VantagePoint claimed that California law applied because Examen met the criteria of California's "outreach statute," codified at Corporations Code section 2115.[4]

The Delaware Supreme Court held that Delaware law applied in that case because "courts must apply the law of the state of incorporation to issues involving corporate internal affairs, and . . . disputes concerning a shareholder's right to vote fall squarely within the purview of the internal affairs doctrine." (*VantagePoint, supra*, 871 A.2d at p. 1115, fn. omitted.) Quoting the United States Supreme Court's decision in *CTS Corp. v. Dynamics Corp. of America* (1987) 481 U.S. 69 [95 L.Ed.2d 67, 107 S.Ct. 1637], the Delaware Supreme Court stated that " '[n]o principle of corporation law and practice is more firmly established than a *State's authority* to regulate domestic corporations, including the authority to *define the voting rights of shareholders.*' " (*VantagePoint, supra*, 871 A.2d at p. 1116, fn. omitted.)

This court agrees that the voting rights of shareholders, just like the payment of dividends to shareholders (see *State Farm, supra*, 114 Cal.App.4th 434) and the procedural requirements of shareholder derivative suits (see *Vaughn, supra*, 174 Cal.App.4th 213), involve matters of internal corporate governance and thus, fall within a corporation's internal affairs. But, as stated above, the allegations made by petitioner involve circumstances that go beyond internal corporate governance.

■ Our Supreme Court has long recognized that claims for wrongful termination in violation of public policy serve vital interests insofar as they impose liability on employers who coerce their employees to engage in

---

[4] Corporations Code section 2115, as succinctly explained by IR, enumerates the various California laws that apply to certain foreign corporations that meet specified financial and operating criteria. IR points out that section 2115 "expressly states that it does *not* apply to companies, like IR, whose securities are listed on the New York Stock Exchange."

criminal or other harmful conduct, or employers who retaliate against their employees for speaking out against such conduct. (See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330] ["an employer's authority over its employee does not include the right to demand that the employee commit a criminal act to further its interests, and an employer may not coerce compliance with such unlawful directions by discharging an employee who refuses to follow such an order. An employer engaging in such conduct violates a basic duty imposed by law upon all employers, and thus an employee who has suffered damages as a result of such discharge may maintain a tort action for wrongful discharge against the employer."]; *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 665 [254 Cal.Rptr. 211, 765 P.2d 373] [an employer's right to discharge an "at will" employee is still subject to limits imposed by public policy, "since otherwise the threat of discharge could be used to coerce employees into committing crimes, concealing wrongdoing, or taking other action harmful to the public weal" (fn. omitted)]; *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 702 [101 Cal.Rptr.3d 773, 219 P.3d 749] ["The central assertion of a claim of wrongful termination in violation of public policy is that the employer's motives for terminating the employee are so contrary to *fundamental norms* that the termination inflicted an injury sounding in tort." (italics added)].)

■ For these reasons, we conclude that under the circumstances presented here, i.e., where there are allegations made by a corporate officer that he was removed for complaining about possible illegal or harmful activity, the internal affairs doctrine is inapplicable and California law governs the claim.[5]

III. *Alternative Grounds for Summary Adjudication**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The alternative writ is discharged. Let a peremptory writ of mandate issue directing the superior court to vacate its order of February 6, 2012, granting real party in interest's motion for summary adjudication of petitioner's claim

---

[5] Because we conclude that California law governs in this instance, we need not address IR's argument and supporting authorities that the Board was entitled to remove petitioner under Delaware law.

*See footnote, *ante*, page 351.

for wrongful termination in violation of public policy, and to enter a new order denying said motion. The parties shall bear their own costs related to this petition.

Ashmann-Gerst, J., and Chavez, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied August 15, 2012, S203729.