Filed 3/23/22  Marriage of V.W. and T.W. CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

In re the Marriage of V.W. and T.W.

| | |
|---|---|
| V.F.,<br><br>　　Respondent,<br><br>　　　　v.<br><br>T.W.,<br><br>　　Appellant;<br><br>SAN MATEO COUNTY<br>DEPARTMENT OF CHILD<br>SUPPORT SERVICES,<br><br>　　Intervener and Respondent. | A161950<br><br>(San Mateo County Super. Ct.<br>No. FAM0119646) |

T.W. seeks review of the trial court's order denying his requests for determination and correction of the amount of child support payment arrearages owed by him to his former wife, V.F.  We reject T.W.'s claims of error and shall affirm.

## I. BACKGROUND

### A. *Backdrop to the Issues Presented in This Appeal*

This long-running marital dissolution proceeding began in 2012 with the filing of a divorce petition by V.F. against her then husband, T.W.  T.W.

1

and V.F. have a son, S.W., who was eight years old when the case was filed and is now in high school. Following entry of a status judgment declaring the marriage dissolved in 2013, T.W. and V.F. had various disputes over the custody of S.W., the approach they would take to S.W.'s education, and a variety of other things.

In March 2014, the court ordered T.W., as the noncustodial parent, to make monthly child support payments at a calculated "guideline" level, plus additional so-called "add on" payments for S.W.'s educational or special needs. (Fam. Code,[1] § 4062; see *In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 471.) One of the most hotly disputed issues in the case had to do with whether S.W. should be homeschooled, which was V.F.'s preference, or should go to a public school, which was T.W.'s preference. After a contested evidentiary hearing, the court ruled in August 2019 that S.W. should be sent to public school, where T.W. informs us he is now thriving. T.W. claims that the resolution of this issue and many other issues in the case was unnecessarily drawn out and expensive.

According to T.W., V.F. took a "slash-and-burn" approach to the case, refusing to cooperate over issues that could have been resolved amicably. He argues that she could afford this pugnacious approach to litigating because her "wealthy parents" were willing to loan her money to pay a lawyer to fight everything, while he had no such financial benefactor and was forced to incur tens of thousands of dollars in credit card debt to pay for the litigation. V.F., predictably, denies the allegations of oppression, points to T.W. as the

---

[1] All subsequent undesignated statutory references are to the Family Code.

2

unnecessarily litigious one, and denies T.W.'s charges that she was needlessly uncooperative.[2]

**B. *T.W.'s Child Support Payment Obligations and Request for Modification Thereof***

What we have described in broad strokes above is the overall procedural context.  A more granular procedural chronology, as specifically pertinent here, is as follows.

At a hearing on March 4, 2014, the court set T.W.'s base child support payment obligations at $1,112 per month, with an additional $619 per month in add-on expenses.[3]  After T.W. lost his job in April 2014, he filed a June 26, 2014 request for order seeking modification of his child support payment obligations (the 2014 Child Support Modification RFO).  The court issued two orders addressing the 2014 Child Support Modification RFO—the first, on December 19, 2014, dealing with base child support, and the second, on March 2, 2020, a nunc pro tunc order that embodies a ruling made from the bench on November 23, 2015, dealing with add-on expenses.

The December 19, 2014 order set a new base level of child support payments "[c]ommencing October 15, 2014" of $1,108.  At a hearing on October 6, 2014, T.W. agreed to this reduced level of payments.  This was only a partial resolution of T.W.'s 2014 Child Support Modification RFO, however.  The parties were unable to agree on the level of add-on payments

---

[2] The record shows that, for much of the history of this case, T.W. was represented by his brother—a lawyer who V.F. claims loaned him money to finance the case and appeared pro bono—and thus that both sides had the benefit of counsel.  The hundreds of entries on the trial court's 61 page docket summary show, further, that the case was intensely litigated at every stage of the proceeding, by both sides.

[3] The March 4, 2014 child support ruling was formalized in the form of findings and order after hearing (FOAH) entered November 7, 2014.

3

at that point, either past due or prospectively.  At a hearing on November 23, 2015, the court ruled that the monthly add-on payment "effective December 1, 2015" would be $325.  There was no formal order memorializing this add-on ruling until, as noted above, the court entered its nunc pro tunc order in March 2020.

From time to time, T.W. appears to have fallen into default on the child support payments owed by him under the court's rulings in October 2014 and November 2015 due to additional periods of unemployment.  But the precise dates of these additional periods of unemployment are unclear.  In his opening brief, T.W. states he "was out of work for several stretches between 2014 and 2018."  When T.W. suffered unemployment again after losing his job in 2014, he says he "reduced his support payments," but that "[e]very time, he increased his payments . . . immediately after finding a new job."  According to T.W., "[a]lthough [V.F.]'s counsel was notified when these job loss and acquisition events occurred, at no point (until August 2019) did [V.F.] ever object to the way [T.W.] was handling these income fluctuations."

## C. *V.F.'s Initiation of Proceedings To Collect Delinquent Child Support Payments*

In what T.W. claims was a retaliatory move after the court ruled in his favor on the homeschooling issue, V.F. filed a claim in August 2019 seeking collection of defaulted child support obligations with the Department of Child Support Services (DCSS).  The parties attempted to resolve this new issue amicably, but were only partially successful.

In October 2019, the parties entered into a stipulation calling for T.W. to pay monthly child support in the amount of $500 commencing November 1, 2019.  They also agreed that the stipulation superseded the "October 6, 2014 base child support order and the November 23, 2015 order for child support add-on expenses."

4

The trial court entered a stipulated order on October 31, 2019, adopting these agreements. The stipulated order, however—like the December 19, 2014 and November 23, 2015 rulings—resolved only what T.W.'s child support obligations would be prospectively from the effective dates set in those orders. It did not address whether T.W. remained liable for any past periods before that, or in what amount.

## D. *T.W.'s Motions in May and June 2020 for Redetermination and Correction of Past Child Support Payment Obligations*

In an apparent attempt to have the court address the issue of past child support obligations retroactively, T.W. filed a request for order (RFO) seeking determination of support arrears on May 14, 2020. Then, on June 15, 2020, T.W. filed another RFO, this one seeking "correction of erroneous add-on order and disallowance of claimed arrears."

Responding to these two RFO's, on October 16, 2020, the DCSS filed a declaration opposing T.W.'s calculation of child support arrears. Based on the original child support order of March 4, 2014, as modified October 6, 2014 and November 23, 2015, V.F.'s representations regarding T.W.'s child support payments, and representations by T.W. himself, the DCSS determined T.W.'s arrears to be $65,700.50.

At a hearing on November 4, 2020, a commissioner found that T.W. owed $65,700.50 in arrears as of October 31, 2019. The commissioner denied T.W.'s requests to reduce arrears and to "correct" the add-on order because the determination of base child support and add-ons had been previously decided and the trial court no longer had jurisdiction to modify those orders.

Following T.W.'s objection to the commissioner's recommended order, a superior court judge held a trial de novo. The judge found that the determination of base child support and add-ons had been determined at hearings on October 6, 2014 and November 23, 2015, and that the FOAH's

5

formalizing those rulings on December 19, 2014 and March 2, 2020, were final because T.W. failed to appeal from them or to request a modification.

On December 10, 2020, the judge denied T.W.'s May and June 2020 RFO's. With respect to T.W.'s requests for determination of child support arrears, correction of erroneous add-on order, and disallowance of claimed arrears, she confirmed, as she found at the hearing on the commissioner's recommendations, that T.W. owed $65,700.50 in arrearages and that she was without jurisdiction to retroactively reduce child support obligations set by prior orders.

It is undisputed that the December 10, 2020 order is an appealable postjudgment order (Code Civ. Proc., § 904.1, subd. (a)(2)) and that T.W. timely filed a notice of appeal from the order on January 29, 2021. V.F. has not appeared as a respondent in the appeal. The only respondent is the DCSS, which intervened[4] when T.W., though his May and June 2020 RFO's, sought retroactive determination and correction of monthly amounts of child support he had been ordered to pay many years ago, thereby threatening to undermine the basis of the DCSS's calculation of the arrearage.

---

[4] The DCSS is authorized to intervene in pending child support litigation matters, which it apparently did here by filing a notice regarding payment of support through the regional office responsible for enforcement in this case, the San Mateo County Child Support Services Department. (§ 17400, subd. (k); Code Civ. Proc., § 387, subd. (b); Cal. Rules of Court, rule 5.360 ["When a local child support agency is providing services as required by Family Code section 17400, that agency may appear in any action or proceeding that it did not initiate by giving written notice to all parties, on *Notice Regarding Payment of Support* (form FL-632), that it is providing services in that action or proceeding . . . ."].) T.W. does not contest the DCSS's standing or the appropriateness of its appearance as a respondent in this appeal.

## II. DISCUSSION

T.W. argues the trial court's determination of arrears in the amount of $65,700.50 and denial of his request for order to correct the "add-on order and disallowance of claimed arrears" were erroneous. To address what was in effect a renewal of his 2014 Child Support Modification RFO, T.W. contends the trial court retained jurisdiction to revisit undecided issues concerning past child support obligations. He further contends that the trial court's failure to exercise jurisdiction deprived him of his due process rights, and that V.F. should be barred on equitable grounds from contesting his claimed reduction and corrections in the child support arrearage debt calculated by the DCSS. We see no merit to any of these arguments.

### A. *Applicable Principles*

A "trial court's determination to grant or deny a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below." (*In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1371.) Each parent has an equal responsibility to support the parent's child. (§ 3900.) Child support refers to "a support obligation owing on behalf of a child" and includes "past due support or arrearage when it exists." (§ 150.) An order for child support "continues in effect until the order (1) is terminated by the court or (2) terminates by operation of law." (§ 3601, subd. (a).)

The duty of support continues "as to an unmarried child who has attained 18 years of age, is a full-time high school student, . . . and who is not self-supporting, until the time the child completes the 12th grade or attains 19 years of age, whichever occurs first." (§ 3901, subd. (a)(1).) "If a parent has been ordered to make payments for the support of a minor child, an action to recover an arrearage in those payments may be maintained at any

time within the period otherwise specified for the enforcement of such a judgment, notwithstanding the fact that the child has attained the age of 18 years." (§ 4503.)

"In terms of modifying support and its impact on accrued support, ' "[t]he Legislature has established a bright-line rule that accrued child support vests and may not be adjusted up or down." ' " (*S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 598.) " ' "If a parent feels the amount ordered is too high—or too low—he or she must seek prospective modification." ' " (*Id.* at pp. 598–599.) A child support order may not be terminated or modified retroactively except as allowed by statute. Section 3653, subdivision (a) allows a support order to be modified or terminated "retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date."

And section 3651, subdivision (c)(1), specifically precludes a trial court from modifying or forgiving "accrued" support payments—i.e., arrearages that have vested prior to a request for prospective modification or termination. (*In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203, 1213; see *County of Santa Clara v. Wilson* (2003) 111 Cal.App.4th 1324, 1327 ["retroactive modification of accrued child support arrearages is statutorily barred"]; *In re Marriage of Cordero* (2002) 95 Cal.App.4th 653, 667–668 & fn. 21 [trial courts lack authority to waive or forgive interest on past due child and spousal support for same reason courts cannot retroactively modify or terminate arrearages themselves]; *In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80 [trial court exceeded its jurisdiction in reducing child support arrearages from $5,000 to $2,000].)

Together, these statutory provisions "divest the trial court of ' "discretion to absolve an obligor of support arrearages, or interest

8

thereon." ' " (*S.C. v. G.S.*, *supra*, 38 Cal.App.5th at p. 599, quoting *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26.)

**B.** *Prior Rulings Resolving the 2014 Child Support Modification RFO*

By his motions in May and June 2020, T.W. sought to contest the accuracy of the base child support payment and add-on payment calculations that the DCSS used in determining his arrearage of $65,700.50. We conclude that by December 10, 2020, the date of the order at issue here, the time had passed to attack the rulings on which this calculation was based.

With respect to base child support, a hearing on T.W.'s 2014 Child Support Modification RFO was held on October 6, 2014. Both T.W. and his counsel were present, as well as V.F. and her counsel. At the hearing, T.W. agreed to pay monthly base child support, commencing on October 15, 2014, in the amount of $1,108. T.W. was ordered to pay this amount based on an agreement that his monthly income was $9,600, which was based on an even further agreement by him that his hourly wage was $60 at 40 hours per week with 48 weeks per year. An FOAH formalizing the ruling was filed on December 19, 2014.

With respect to child support add-ons, the parties did not agree to an amount at the October 6, 2014 hearing. The issue was left unaddressed at that point, with a continued hearing set for December 8, 2014 to address the matter further. The trial court neither stayed nor modified the then current add-on child support payment obligations established March 4, 2014 and later formalized in an FOAH November 7, 2014.[5] Ultimately, the matter was

---

[5] T.W. contends that, at the October 6, 2014 hearing, the court suspended the $619 in add-on payments ordered on March 4, 2014. That is not how we read the record. As proof that the court suspended T.W.'s monthly add-on payment obligation, T.W. points to a reference by V.F.'s counsel at the November 23, 2015 hearing to the need to "reinstate" T.W.'s add-on payment

continued again to a hearing on November 23, 2015, when the trial court ruled from the bench that T.W. must pay $325 per month, effective December 1, 2015, for child support add-on assistance. This ruling, the court's last addressing the 2014 Child Support Modification RFO, was formalized in an FOAH filed March 2, 2020.

## C. *Legal Consequences of Failure To Seek Review of Appealable Rulings*

T.W. had an opportunity to appeal the court's decisions addressing his 2014 Child Support Modification RFO, but he failed to avail himself of that right. "The law clearly allows an appeal from an order modifying child support." (*County of Los Angeles v. Patrick* (1992) 11 Cal.App.4th 1246, 1250.) "It is appealable pursuant to Code of Civil Procedure [former] section 904.1, subdivision (b), as an order after final judgment." (*Ibid*.) California Rules of Court, rule 8.104(a) sets the time within which a party may file an appeal. The rule requires a notice of appeal to be filed on or

---

obligations and to a DissoMaster calculation attached as an exhibit to the FOAH entered after the October 6, 2014 hearing. This calculation, which was apparently prepared by T.W.'s then counsel, shows the reduction of T.W.'s base child support payment to $1,108 per month. Just below that figure, however, the calculation lists zero for add-ons. We do not read the zero listed for add-ons as evidence of the court's intent to order a suspension of T.W.'s then unresolved add-on payment obligations. The DissoMaster calculation is designed to explain the only ruling made at the October 6, 2014 hearing, which addressed base child support, not add-on payment obligations. The narrative portion of the order following the hearing states, "The issue of child support add-on expense *has yet to be resolved* and shall be continued to the December 8, 2014 hearing." (Italics added.) T.W.'s attempt to read the DissoMaster calculation to evidence suspension of the add-on payments established by the court on March 4, 2014, conflicts with the narrative portion of the order, which speaks for itself, regardless of what V.F.'s counsel said or meant to say at the November 23, 2015 hearing about add-ons. And in any event, if there had been any such suspension it would be shown in the November 7, 2014 FOAH. It is not.

10

before the earlier of 60 days after service by the superior court clerk of a filed-endorsed copy of the judgment, 60 days after notice of its entry served by a party, or 180 days after its entry. (Cal. Rules of Court, rule 8.104(a)(1) (A)–(C).) Here, T.W.'s deadline to appeal appears to have been either: (1) 60 days after notice of entry of the March 2, 2020 order if served on him by V.F., extended by 30 days under the emergency order entered due to the Covid pandemic; or (2) at the latest, August 31, 2020, 180 days after entry of the order.[6] He failed to meet either deadline.

" 'The time for appealing a judgment is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal.' " (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 279.) " 'The law of this state does not allow, on an appeal from a judgment, a review of any decision or order from which an appeal might previously have been taken.' " (*In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119.) The rules of preclusion are also relevant here. "When the trial court issues an appealable order in an action, and no appeal is taken, the order becomes binding in the same case as to the issues addressed in the order." (*In re Marriage of Wang & Zhou* (2021) 62 Cal.App.5th 1098, 1110, fn. 5.)

The doctrine of res judicata—which encompasses both claim preclusion and issue preclusion (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813,

---

[6] On April 15, 2020, the Chief Justice renewed her March 18, 2020 emergency order which authorized the Courts of Appeal to issue orders extending the time "in which to do any act required or permitted under the California Rules of Court." Accordingly, on April 15, 2020, the administrative presiding justice of this district issued an order that provided in pertinent part: "All time periods specified by the California Rules of Court that occur during the time period between April 17, 2020, through and including May 18, 2020, are hereby extended for 30 days from the date of the specified event." (Apr. 15, 2020 Implementation Order for the Renewed Order Pursuant to Rule 8.66 of the California Rules of Court).

824)—gives conclusive effect to a final judgment resolving claims that were or could have been resolved in prior litigation between the same parties (claim preclusion) as well as to a final order that adjudicates an issue against one of the parties in prior litigation (issue preclusion). (*Ibid*.) Claim preclusion forecloses further litigation of claims or defenses that were actually adjudicated, but also that could have been raised. (*Ibid*.) And issue preclusion, unlike claim preclusion, may be invoked by a third party offensively against a party who litigated an issue and lost in prior proceedings where the third party was not present. (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 813.) To determine the applicability of issue preclusion, three questions are pertinent: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" (*Ibid.*; see *Roos v. Red* (2005) 130 Cal.App.4th 870, 879.)

### D. *T.W.'s Statutory, Constitutional, and Equitable Arguments*

According to T.W., section 3653 did not prohibit the trial court from modifying child support for the period June 2014 to December 2015 because his 2014 Child Support Modification RFO "remained pending" when he filed his motions in May and June 2020. In T.W.'s view, the issues that arose in 2014 concerning modification of his support obligations "took a back seat" to other issues in the case and were never "formally adjudicated." The DCSS disagrees, claiming that the premise of this argument is factually incorrect. According to the DCSS, T.W.'s 2014 Child Support Modification RFO was resolved based on agreements the parties made, and its calculated arrearage reflects the reductions to T.W.'s payment obligations to which the parties agreed.

12

The DCSS has the better argument. The issue here, as a practical matter, is whether the orders deciding the 2014 Child Support Modification RFO reached finality, triggering a right to appeal. We think they did. There is nothing in the record of the proceedings for November 23, 2015, to suggest that the court reserved jurisdiction in the expectation of making further rulings on T.W.'s 2014 Child Support Modification RFO. As always, either party had the right to file another RFO upon changed circumstances—thus the court ordered $325 per month going forward "until further order of the court"—but nowhere did the court indicate it was, in effect, holding the November 23, 2015 hearing open by continuing it indefinitely to some future, yet-to-be-calendared date. After announcing its ruling on add-on liability commencing December 1, 2015 at the November 23, 2015 hearing, the court set a mandatory settlement conference as to the issue of past add-on liability. It is not clear from the record what happened after that, but since the 2014 Child Support Modification RFO was T.W.'s motion, the burden was on him to have it re-calendared since he was seeking to change the status quo (i.e., the level of add-on payments ordered in March 2014). We see no evidence that he sought to do so, even when the parties asked the court to enter a new, superseding order, setting a new combined monthly amount for basic child support and add-ons of $500 as of November 1, 2019. It appears to us that, by then, further pursuit of the 2014 Child Support Modification RFO by T.W. had been abandoned.

T.W. contends that, where it is unclear from the record whether the court intended to reserve jurisdiction so that it could make a later ruling on a pending issue, courts may imply the necessary reservation to support jurisdiction. For this proposition he cites cases founded on the presumption of correctness that we give to trial court rulings on review. (*In re Marriage of*

13

*Lusby, supra*, 64 Cal.App.4th at p. 470 [" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' "]; *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 512 [same].) That presumption cuts the other way here. We are not dealing with a situation in which the court may or may not have addressed an issue as fully as it intended, and when it returned to the matter on a later date *and made a further ruling*, we may reasonably imply from the fact that it made a further ruling that it reserved jurisdiction to do so.

Instead, the most reasonable reading of the record here is that, as of November 23, 2015, the court made all the rulings it expected to make in resolving T.W.'s 2014 Child Support Modification RFO. The court appears to have encouraged settlement of any remaining disputes about past child support obligations, but, tellingly, it did not continue the November 23, 2015 hearing, which would have indicated an intention to decide the issue of T.W.'s past liability if the parties could not resolve it themselves. In effect, the court took the level of add-on liability in effect from March 2014 to November 2015 as having been established—by the original March 4, 2014 order—unless the parties agreed otherwise, which they never did. On this record, we see no implied reservation of jurisdiction to decide anything more after the November 23, 2015 hearing, and no impediment to an appeal.[7]

If, by contending that the 2014 Child Support Modification RFO remained pending until May 2020, what T.W. means to argue is it was never resolved on a *contested* basis, that makes no difference. The fact the orders

---

[7] However T.W.'s deadline to appeal is analyzed, he failed to seek review of the court's last order addressing his 2014 Child Support Modification RFO on November 23, 2015—60 days after service of notice of the March 2, 2020 nunc pro tunc order, 180 days after entry of either order, or at any time.

14

resolving the 2014 Child Support Modification RFO were entered by agreement does not mean they are any less binding than if they had been adjudicated after a full contest. Nor is it open to T.W. now to argue that the court's rulings of December 19, 2014, and November 23, 2015, failed to address the level of base child support payments and the level of add-on payments from June 2014 through the effective dates set by those rulings. The issue of what T.W. owed starting from the filing of the 2014 Child Support Obligation Modification RFO was squarely presented to the trial court in 2014 and 2015, and if T.W. believed the orders resolving his application for relief were incomplete, his remedy was to file a timely appeal, not to stand silent for six years and then return to court asking to revisit the matter when V.F. sought collection on his past defaults.

T.W. attempts to invoke due process, arguing that "[w]here a right to judicial review of an issue exists, refusing to carry out that review amounts to constitutional error." He fails to appreciate that this principle has no application here because he had an opportunity to seek judicial review and passed on it. V.F.'s right to demand payment of delinquent child support in compliance with the court's March 4, 2014 child support order, as modified October 6, 2014 and November 23, 2015, vested when the time to appeal the orders on those modification rulings expired. T.W.'s failure to appeal means that each of these orders now has binding effect. " 'It is the general rule that a final judgment or order is res judicata even though contrary to statute where the court has jurisdiction in the fundamental sense, i.e., of the subject matter and the parties.' " (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 599; *id.* at p. 595 [" 'An order granting or denying temporary alimony is not merely a procedural ruling made during the course of the action that the court may reconsider at any time before final judgment [citations], but is

15

directly appealable as a final judgment independently of the main action.' "], disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) Jurisdiction in the fundamental sense has never been in question here.

Why, years after the fact, T.W. believes he now has a legal basis to revisit child support modification rulings made many years ago is unclear. Apparently, looking back in light of the history of this litigation, he wishes to try to argue some form of equitable estoppel based on alleged litigation misconduct or inconsistency in V.F.'s litigation positions. T.W. points out, for example, that in V.F.'s response to the 2014 Child Support Modification RFO in September 2014, she conceded that his base child support payments should temporarily be reduced to $18 per month in light of his then unemployed status. He now appears to contend that she should be estopped from arguing otherwise and opposing comparable reductions when he lost his job at later points in time. Based on the theory that the obligation to pay $619 per month in add-ons was suspended at the hearing on October 6, 2014, he also claims that V.F. had an obligation to inform the DCSS that it should not include "a total of $8,666 in add-ons as due and owing with respect to a 14-month stretch during which that obligation had been suspended." As we understand it, he argues it was misconduct for V.F. not to say anything to the DCSS about the suspension of his obligations in 2014.

We reject this line of argument and decline to take sides in the war of bitter feelings that appears to have characterized this litigation. Even if equity supplied valid legal grounds to revisit or block enforcement of vested child support obligations, nothing on this record justifies invocation of equitable principles against V.F. here. Her motives for seeking to enforce past child support obligations are irrelevant so long as she had a nonfrivolous

16

basis for doing so, which she did. Whatever concessions V.F. made in the lead-up to the October 6, 2014 hearing are also irrelevant; the position she ultimately took at the hearing itself is what counts, because that is what is reflected in the ruling that day and in the December 19, 2014 order. As for the purported suspension of T.W.'s add-on payment obligation, there was no such suspension so there was nothing to report to the DCSS in that respect; the $619 add-on obligation ordered on March 4, 2014 remained in place until December 1, 2015, and was not modified until the November 23, 2015 hearing. The burden was on T.W. to take all procedural steps necessary to secure relief from past child support obligations prior to the effective dates in the December 19, 2014 and March 2, 2020 orders, which he never did.

## E. *Summary of Analysis*

The bottom line with respect to T.W.'s *past* child support obligations—pre-dating the effective dates set by court's rulings on October 6, 2014, and November 23, 2015—is this. T.W. failed to appeal the orders resolving his 2014 Child Support Modification RFO, and the trial court had no statutory authority to reconsider them.

In addition to the statutory impediment presented by section 3651, subdivision (c)(1), the court's December 19, 2014 and March 2, 2020 orders were binding under the doctrine of res judicata. The identical issues raised by T.W. in his 2014 Child Support Modification RFO were raised again in his May and June 2020 RFO's. T.W. is therefore barred from relitigating his past child support obligations as a matter of issue preclusion. To the extent issues concerning these obligations were not explicitly addressed in the formal orders following the October 6, 2014 and November 23, 2015 hearings, those issues were impliedly decided against him. (*Ellena v. State of California* (1977) 69 Cal.App.3d 245, 254.) They may not be revisited now, in litigation between T.W. and V.F. (*In re Marriage of Murray*, *supra*,

101 Cal.App.4th at pp. 599–600), or in collection proceedings pursued by the DCSS, either as a third party intervener in this case or separately in any enforcement case against T.W. (*Bernhard v. Bank of America*, *supra*, 19 Cal.2d at p. 813.)

Other than his unfounded appeals to equity, T.W. makes no specific claim that any of the court's orders modifying his child support obligations *prospectively* from October 15, 2014 (base child support), December 1, 2015 (add-ons), or November 1, 2019 (base child support and add-ons combined) constituted an abuse of discretion. If construed as an effort to modify his child support obligations on that basis, T.W.'s May and June 2020 RFO's were properly denied on the ground that the belatedly challenged orders from 2014 and 2015 were within the range of the court's discretion based on the record as it stood at the time those orders were entered.

Accordingly, we reject T.W.'s claims that the trial court erred by denying his May and June 2020 RFO's, and that in doing so, the court deprived him of his due process rights and failed to do justice in the eyes of equity.[8] The trial court explained its decision solely in jurisdictional terms. Exercising our power on appeal to affirm on any correct ground (*Boschetti v. Pacific Bay Investments Inc.* (2019) 32 Cal.App.5th 1059, 1065), we conclude that, whether the court's ruling is cast as one grounded in lack of jurisdiction, as an

---

[8] T.W. makes one additional point regarding the trial court's jurisdiction to modify previous child support orders. He argues "no jurisdictional requirement exists with respect to considering other arrears-related matters." Due to the opaque phrasing of this contention, it is unclear whether the argument differs from the points we have already addressed. But if it does, we decline to address it. Because there is nothing in the record to indicate that T.W. objected on this ground in the trial court, we will treat the argument as forfeited. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [appellant has burden of providing record adequate to show what he seeks to appeal].)

18

application of res judicata principles, or as an appropriate exercise of discretion on the merits, the ruling was correct.

### III. DISPOSITION

Affirmed.  The DCSS to recover its costs on appeal.

STREETER, Acting P. J.

WE CONCUR:

BROWN, J.
ROSS, J.*

---

* Judge of the Superior Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.