Filed 3/7/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GIAMPAOLO BOSCHETTI,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>PACIFIC BAY INVESTMENTS INC. et al.,<br><br>      Defendants and Respondents. | A148464<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC09493195) |

When an action is brought to dissolve a California limited partnership (LP) or limited liability company (LLC), California law allows the other partners or members to avoid the dissolution by purchasing, for cash, the interests owned by the party seeking dissolution. (Corp. Code, §§ 15908.02, subd. (b) [LP], 17707.03, subd. (c)(1) [LLC].)[1] These "buyout" provisions do not apply to an action to dissolve a general partnership. (§§ 16801–16807.)

Defendants and cross-complainants here assert a claim for dissolution of a general partnership. In response, the plaintiff and cross-defendant seeks to buy out defendants' interests in several out-of-state LP's and LLC's that hold title to some of the alleged general partnership's properties. The trial court concluded that, because there was no pending claim for dissolution of the LP's and LLC's, as opposed to the alleged general partnership that owned them, it lacked jurisdiction to order a buyout. We agree that the court lacks authority to order dissolution of the out-of-state entities, although we rest our

---

[1] All undesignated statutory references are to the Corporations Code.

decision on a different ground. We also reject the contention that the trial court improperly granted a motion for reconsideration. We shall, therefore, affirm the trial court's orders.

## I.  BACKGROUND

### A.  The Complaints

Plaintiff and appellant Giampaolo Boschetti brought this action against defendants Pacific Bay Investments (Pacific Bay), Adam Sparks, and a number of other entities in 2009.[2] The complaint alleges that Boschetti and Sparks owned multiple pieces of commercial real property through membership in limited liability companies and partnerships, that defendants provide real property management services for the real estate portfolio, and that Pacific Bay paid itself improper distributions in violation of its fiduciary duty to Boschetti. The original complaint sought damages, the production of records, and injunctive and declaratory relief, as did a first amended complaint. The operative second amended complaint adds causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, conversion, and an accounting.

### B.  The Cross-Complaints and Answers

Sparks and Pacific Bay cross-complained in 2010. Among their causes of action, they sought dissolution of six of the many out-of-state LP's and LLC's on the ground that

---

[2] The named plaintiff was Giampaolo Boschetti aka G. Paul Boschetti, individually and as managing member of Pabo Segundo, LLC, a Delaware Limited Liability Company and Pabo, LLC, a Texas Limited Liability Company. Some of the pleadings spell his first name Giampaulo). The complaint named as defendants—in addition to Pacific Bay and Sparks—Singing Cowboy, Inc., a Texas Corporation; Texas Rendezvous, LP, a Texas Limited Partnership; Lonesome Cowboy, LP, a Texas Limited Partnership; Sparks & Boschetti, LLC, a Hawaii Limited Liability Company; Hale Akahai, LLC, a Hawaii Limited Liability Company; Triple Horseshoe, LP, a Texas Limited Partnership; Hilo Center, LLC, a Delaware Limited Liability Company; Kiyomitex, LLC, a Texas Limited Liability Company; Double Horseshoe, LLC, a Delaware Limited Liability Company, and PAC South Investments, LLC, a Texas Limited Liability Company.

Sparks and Boschetti could not coexist effectively given the current litigation. In his answer to the cross-complaint, Boschetti stated he elected to purchase Sparks's membership interest in all three of the LLC's to be dissolved—Hale Akahai, LLC, Hilo Center, LLC, and Sparks & Boschetti, LLC (the LLC's)—and to purchase Sparks's interest in two of the three LP's—Triple Horseshoe, LP and Texas Rendezvous, LP (the LP's).[3] Boschetti did not pursue judicial proceedings to buy out Sparks's interest in these entities while the original cross-complaint was operative.

Sparks and Pacific Bay amended their cross-complaint twice in 2014. These cross-complaints omitted the causes of action for dissolution of the LLC's and LP's.

The third amended (and operative) cross-complaint was filed in October 2015. In it, Sparks and Pacific Bay allege that Boschetti and Sparks have a general partnership under section 16101; that through the partnership they have acquired, owned, operated, and sold properties in California, Texas, and Hawaii; and that, due to this litigation, it is not reasonably practicable to carry on the partnership in conformity with the partnership agreement. They seek an order dissolving the general partnership and winding up its affairs pursuant to section 16807.

In his answer to the third amended cross-complaint, Boschetti generally denies all of its allegations. As affirmative defenses, he again elects to avoid dissolution of the LLC's by buying out Sparks's membership interests pursuant to section 17707.03 and to avoid dissolution of the LP's by buying out Sparks's interest pursuant to 15908.02 at the entities' fair market value as of the date the original cross-complaint was filed.

## C. Request for Stay and Appointment of Appraisers

Boschetti filed a motion to stay the winding up and dissolution of the LLC's and LP's and to appoint three disinterested appraisers pursuant to sections 15908.02,

---

[3] In 2014, we affirmed an order of the trial court denying defendants' petition to compel arbitration. (*Boschetti v. Pacific Bay Investments, Inc.* (Jan. 30, 2014, A134195) [nonpub. opn.].)

3

subdivision (c) and 17707.03, subdivision (c)(2).[4] He argued that defendants' claim for dissolution of the alleged general partnership amounted to a request that the court also dissolve the LLC's and LP's that held title to the properties at issue because they would have to be liquidated in order to wind up the affairs of the general partnership. In opposition, Pacific Bay and Sparks did not object to the appointment of an appraiser, but contended that the properties should be valued based on their current value, that it was inappropriate for Boschetti to make a unilateral selection of which properties he wished to acquire, and that the status of all properties owned by the parties should be resolved together.

On March 8, 2016, the trial court granted Boschetti's motion to stay the case but did not decide whether the properties should be appraised at their current, or an earlier, value. Instead, the court ordered the parties to meet and confer regarding the appointment of appraisers, and instructed defendants to file a motion to set a valuation date (the March order).

Defendants filed a "Motion to Set A Valuation Date and Appoint Appraisers" on April 12, 2016, associating new counsel on the same date. They argued in support of the motion that the trial court lacked jurisdiction to set a valuation date under sections 15908.02 and 17707.03 because there was no pending action to dissolve the LP's and LLC's, and because the entities were organized under the laws of Texas, Hawaii, and Delaware—states whose laws do not authorize a court to order a compulsory buyout of business interests. They also took the position that the court had jurisdiction to dissolve and wind up the *general* partnership under section 16801, and that it was appropriate to

---

[4] Section 15908.02, subdivision (c), authorizes the court to stay the winding up and dissolution of a limited partnership if the partners seeking dissolution and those asserting their right to a buyout cannot agree on the fair market value of the partnership interests. The court then appoints three disinterested appraisers to appraise the fair market value of the partnership interests held by the moving parties. (*Id*., subd. (d).) Section 17707, subdivision (c) contains similar provisions for the buyout of membership interests in an LLC in the case of a dissolution proceeding.

4

carry out a valuation of the businesses and assets of the general partnership as a step toward winding it up. To that end, defendants nominated appraisers to conduct a valuation of the LP's and LLC's as assets of the general partnership.

On May 2, 2016, the trial court made two orders (the May orders). First, the court vacated the March order on the ground it lacked jurisdiction to order dissolution of the LLC's and LP's so there could be no buyout proceedings. Second, it denied defendants' motion to set a valuation date and appoint appraisers on the ground that there was no pending claim for dissolution of any of the LLC's or LP's, so that the court lacked jurisdiction to order dissolution of the entities and there could be no buyout proceedings.

Boschetti has appealed from these orders. (§§ 150908.02, subd. (d), 17077.03, subd. (c)(3); see *Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 625–627 (*Panakosta*) [denial of petition for buyout under § 15908.02 is appealable]; see also *Ontiveros v. Constable* (2018) 27 Cal.App.5th 259, 270 [§ 2000].)

## II. DISCUSSION

### A. The Trial Court Lacked Authority to Order Buyout of Foreign Entities

Boschetti contends the trial court erred in concluding it was not authorized to order a buyout of the LLC's and LP's. He raises a question of statutory interpretation, which we review de novo. (*Panakosta*, *supra*, 199 Cal.App.4th at p. 628.) We may affirm on any correct ground, regardless of the grounds relied upon by the trial court. (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 278, fn. 5.)

All of the LLC's and LP's at issue here are organized under the laws of other states, either Texas, Delaware, or Hawaii: Texas Rendezvous, LP and Triple Horseshoe, LP are Texas limited partnerships; Hale Akahai, LLC and Sparks and Boschetti, LLC are Hawaii limited liability companies; and Hilo Center, LLC is a Delaware limited liability company. As the parties agree, the states under which these entities are organized do not provide for compulsory buyout rights in the event of a judicial dissolution. (See Tex. Bus. Orgs. Code Ann., §§ 11.314, 153.504 [involuntary termination of Texas partnership and disposition of assets]; Hawaii Rev. Stat. Ann., §§ 428-801, 428-806 [dissolution of

5

Hawaii LLC and distribution of assets]; Del. Code Ann. tit. 6, §§ 18-802, 18-804 [judicial dissolution of Delaware LLC and distribution of assets].)

Defendants take the position that a California court lacks jurisdiction to order the dissolution of a foreign LLC or LP.  They draw our attention to numerous out-of-state cases expressing the principle that authority to dissolve such an entity resides only in the state in which it is organized.  For instance, the court in *Matter of Raharney Capital, LLC v. Capital Stack LLC* (2016) 138 A.D.3d 83, 86–87 [25 N.Y.S.3d 217, 219–220] stated, "We agree with the near-universal view that the courts of one state do not have the power to dissolve a business entity formed under another state's laws.  Because a business entity is a creature of state law, the state under whose law the entity was created should be the place that determines whether its existence should be terminated."  (See also, *State v. Dyer* (1947) 145 Tex. 586, 591 [200 S.W.2d 813, 815] ["Since a corporation is a creature of the state by which it is chartered, the right to dissolve the corporation without its consent belongs exclusively to the state"]; *Matter of MHS Venture Mgt. Corp. v. Utilisave* (2009) 63 A.D.3d 840, 841 [881 N.Y.S.2d 452, 454] ["A claim for dissolution of a foreign limited liability company is one over which the New York courts lack subject matter jurisdiction"]; *Azure Dolphin, LLC v. Barton* (N.C. Super. Ct. 2017) 2017 NCBC LEXIS 90, *15–16 [applying rule to foreign limited liability companies and limited partnerships].)

Boschetti contends these cases are inapposite because he seeks not to dissolve, but to *avoid* the dissolution of, the entities at issue.  But "the right of buyout under section 15908.02 is dependent upon a cause of action for judicial dissolution.  A request for buyout under section 15908.02 does not constitute a cause of action independent from a judicial dissolution action."  (*Panakosta*, *supra*, 199 Cal.App.4th at p. 634; see *Kennedy v. Kennedy* (2015) 235 Cal.App.4th 1474, 1485–1488 [applying same rule to § 17707.03 claim].)  Boschetti also noted at oral argument the practical advantages of allowing a single California court to dissolve both the general partnership and all the LLC's and LP's that it owns.

However, we need not decide whether a California court has jurisdiction to dissolve the foreign entities because we conclude that, even assuming it does, the internal affairs doctrine would require it to apply to a dissolution claim the law of the state under which the entity was organized. " 'The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.' [Citations.] 'States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care.' " (*State Farm Mutual Automobile Ins. Co. v. Superior Court* (2003) 114 Cal.App.4th 434, 442.) As stated in the Restatement Second of Conflict of Laws: "The local law of the state of incorporation will be applied to determine the right of a shareholder to participate in the administration of the affairs of the corporation, in the division of profits *and in the distribution of assets on dissolution* and his rights on the issuance of new shares, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the shareholder and the corporation, in which event the local law of the other state will be applied." (Rest. 2d of Conflict of Laws, § 304, italics added.) The internal affairs doctrine applies to foreign limited partnerships (§ 15909.01) and foreign limited liability companies (§ 17708.01; see former § 17450, subd. (a)).

Boschetti argues that a claim for dissolution does not fall within the scope of the internal affairs doctrine because the doctrine does not govern the transfer of property. For this point, he relies on *Lidow v. Superior Court* (2012) 206 Cal.App.4th 351, 359 (*Lidow*), which states, " '[T]here is no reason why corporate acts' involving 'the making of contracts, the commission of torts and the transfer of property' 'should not be governed by the local law of different states.' " But what is at stake here is not a mere transfer of property, but the continuing existence of the entities and the relations of the partners or members of the entities. The court in *Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1194 (*Colaco*), recently recognized that a claim for dissolution

7

involves "quintessential internal governance issues." As multiple courts in other jurisdictions have recognized, "[n]o 'affair' is more 'internal' than a claim that could result in the termination of the existence of the corporation. No state has a greater interest in that question than the state of incorporation." (*Marcus v. Lincolnshire Mgmt., Inc.* (S.D.N.Y. 2006) 409 F.Supp.2d 474, 481; accord *Heine v. Streamline Foods, Inc.* (N.D. Ohio 2011) 805 F.Supp.2d. 383, 390; *Hilton Head Holdings b.v. v. Peck* (S.D.N.Y. 2012) 2012 U.S. Dist. LEXIS 24984, *19; see *Warde-McCann v. Commex, Ltd.* (1987) 135 A.D.2d 541, 542 [522 N.Y.S.2d 19] ["It is well settled that 'a foreign corporation is controlled, as to its dissolution, by the laws of its domicile, and is not affected by the laws which are intended to govern the dissolution of corporations created under local laws' "].)

Boschetti urges us not to apply the internal affairs doctrine on the ground that California has a more significant relationship with the LLC's and LP's than the states of their organization with respect to the issue of their dissolution. (See *Vaughn v. LJ Internat., Inc.* (2009) 174 Cal.App.4th 213, 225–226.) He points out that the mailing address of Sparks and Boschetti, LLC is in San Francisco and that both partners in the LLC have addresses in California; that Hilo Center's principal business office is listed in San Francisco; that Hale Akahai's two partners (Sparks and Boschetti) have San Francisco addresses, and an LLC arbitration clause provides for venue in San Francisco; that Triple Horseshoe and Texas Rendezvous's principal places of business are listed care of Sparks in San Francisco, and that all of the LLC's and LP's are subsidiaries of the alleged general partnership.

We are unpersuaded. The properties owned by the entities in question are located not in California, but in Texas and Hawaii, the states in which four of the five entities were formed. The agreements that created the LLC's and LP's each recited that the entities were formed pursuant to the law of the foreign states, and at least three of them specified that the law of the foreign state governed the rights and duties or remedies of the members or partners. In these circumstances and for purposes of this action, we cannot conclude California has a more significant relationship to the LLC's and LP's than the states in which they were organized.

Boschetti also argues the internal affairs doctrine is inapplicable because California has an interest in avoiding dissolution of the entities. An exception to the internal affairs doctrine was applied in *Lidow*, *supra*, 206 Cal.App.4th at p. 364, in which the court concluded that, "where there are allegations made by a corporate officer that he was removed for complaining about possible illegal or harmful activity, the internal affairs doctrine is inapplicable and California law governs the claim." The court explained: "[C]ourts are less apt to apply the internal affairs doctrine when vital statewide interests are at stake, such as maintaining the integrity of California security markets and protecting its citizens from harmful conduct. In contrast, . . . when less vital state interests are at stake (e.g., whether a foreign corporation headquartered in another state pays promised dividends to its stockholders, or whether the shareholder of a foreign corporation must fulfill certain procedural requirements set before bringing a derivative suit), courts are more apt to apply the internal affairs doctrine." (*Id.* at p. 362; see also *Colaco*, *supra*, 25 Cal.App.5th at pp. 1191–1196 [declining to apply internal affairs doctrine where it conflicted with contractual choice-of-law provision and noting California's "strong public policy" in enforcing reasonable choice-of-law provisions].)

Boschetti contends California's public interest in preserving corporate enterprises falls within this exception to the internal affairs doctrine. For this proposition, he cites *Mart v. Severson* (2002) 95 Cal.App.4th 521, 524, which notes that section 2000's buyout procedures for California corporations reflect the legislative interest in preserving corporations as going concerns if desired by a majority of shareholders, and the procedures are intended to be a " 'meaningful alternative to termination of the enterprise.' " Again, we disagree with Boschetti. The preservation of an individual LLC or LP holding property in another state does not fall within *Lidow*'s category of a "vital statewide interest[]." (*Lidow*, *supra*, 206 Cal.App.4th at p. 362.)

Moreover, as a matter of statutory interpretation, the California statutes providing compulsory buyout rights apply only to LLC's and LP's formed under or subject to the California Revised Uniform Limited Liability Company Act (§ 17701.01 et seq.) or California's Uniform Limited Partnership Act of 2008 (§ 15900 et seq.). (See

9

§ 17701.02, subds. (j) & (k) [defining limited liability company and foreign limited liability company]; § 15901.02, subds. (k) & (q) [defining limited partnership and foreign limited partnership].)  That is, the statutes allow members or partners to avoid dissolution of "the limited liability company" (§ 17707.03, subd. (c)(1)) or "the limited partnership" (§ 15908.02, subd. (b)), and those terms are defined to mean entities formed under or subject to California's LLC or partnership law, as opposed to ones formed under the law of another jurisdiction (§§ 17701.02, subds. (j) & (k), 15901.02, subds. (k) & (q)).  In light of this limitation, there is no basis to conclude California has a vital interest in applying its laws pertaining to dissolution and buyout to foreign LP's and LLC's.  And, as we have explained, the states under which the entities are organized do not provide for compulsory buyout rights.

**B.  The Trial Court Did Not Grant an Improper Motion for Reconsideration**

Boschetti contends that defendants' motion here to set a valuation date was effectively a motion for reconsideration, and that the trial court lacked authority to grant reconsideration because the motion did not comply with the requirements of Code of Civil Procedure section 1008.  Subdivision (a) of that statute requires a motion for reconsideration to be brought within ten days after service of written notice of an order and to be based "upon new or different facts, circumstances, or law."  Code of Civil Procedure section 1008 "specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion . . . . No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section." (*Id.*, subd. (e).)  As Boschetti points out, the motion to set a valuation date was filed outside the statutory time frame, and it did not include an affidavit setting forth new or different facts, circumstances or law.  (Code Civ. Proc., § 1008, subd. (b).)

We disagree with Boschetti that Code of Civil Procedure section 1008 applies. Defendants filed their motion to set a valuation date at the direction of the trial court.  In that motion they argued—correctly, as we have concluded—that the court lacked legal

10

authority to order a buyout of the LLC's and LP's, but they nominated appraisers as a step in winding up the general partnership. They did not ask the court to reconsider its March order staying the action and directing them to file a motion to set a valuation date. Instead, they complied with the terms of that order. While the motion prompted the court to reconsider its views on governing law, it was not a motion for reconsideration.

Our Supreme Court has made clear that, while Code of Civil Procedure section 1008 prohibits a *party* from making a renewed motion not based on new facts or law, it does "not limit a *court's* ability to reconsider its previous interim orders on its own motion, as long as it gives the parties notice that it may do so and a reasonable opportunity to litigate the question." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1096–1097 (*Le Francois*).) The court explained, "We cannot prevent a party from communicating the view to a court that it should reconsider a prior ruling . . . . [I]t should not matter whether the 'judge has an unprovoked flash of understanding in the middle of the night [citation] or acts in response to a party's suggestion. If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief." (*Id.* at p. 1108; see *Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 34 ["Trial courts always have discretion to revisit interim orders in service of the paramount goal of fair and accurate decisionmaking"]; *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1308 ["*Le Francois* simply requires that the trial court reconsider a prior ruling based on its own realization that the ruling was erroneous, and not based upon a determination that [an improper] motion to reconsider should itself be granted on the merits."]; accord, *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 73–74.)

The trial court's action meets that standard. While pointing out that the court lacked jurisdiction to order a buyout of the LLC's and LP's, defendants did not ask the trial court to reconsider the March order. At the hearing on defendants' motion, the court made clear that it was displeased the jurisdictional issue had not been raised earlier, but indicated it was now of the view that it lacked the authority to enforce a buyout. It accordingly vacated its earlier order. On this record, it is apparent that—although

11

prompted by the new arguments defendants raised—the court's action was "under its own authority" (*Cox v. Bonni* (2018) 30 Cal.App.5th 287, 313) and " 'based on its own realization that the ruling was erroneous.' " (*In re Marriage of Barthold*, *supra*, 158 Cal.App.4th at p. 1308.)

## III. DISPOSITION

The May 2, 2016 orders are affirmed.

                                                             _____

                                                             TUCHER, J.

WE CONCUR:


_____

STREETER, Acting P. J.


_____

BROWN, J.

*Boschetti v. Pacific Bay Inv., Inc.* (A148464)

13

Trial Court:                        City & County of San Francisco Superior Court

Trial Judge:                        Hon. Harold E. Kahn

Counsel for Appellant:              Niven & Smith and Leo M. LaRocca;
                                    Law Offices of Valerie T. McGinty and Valerie
                                    T. McGinty

Counsel for Respondents:            Valle Makoff and Jeffrey T. Makoff, Patrick T.
                                    Freeman; Roubinian Law Group and Leon V.
                                    Roubinian; Kevin W. Horan

*Boschetti v. Pacific Bay Inv., Inc.* (A148464)