Filed 11/12/24 Rodriguez v. KS Industries CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MANUEL RODRIGUEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KS INDUSTRIES, LP., et al.,<br><br>Defendants and Respondents. | F085605<br><br>(Super. Ct. No. BCV-15-101757)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Thomas S. Clark, Judge.

Law Office of Kenneth J. Melrose and Kenneth J. Melrose for Plaintiff and Appellant.

Clifford & Brown, Arnold Anchordoquy and John R. Szewczyk, for Defendants and Respondents.

-ooOoo-

Manuel Rodriguez was a supervisor at AC Pipe Company (AC Pipe). When an AC Pipe vehicle became disabled on the two-lane Lerdo Highway, Rodriguez responded to its location. While he and a colleague attempted to refuel that disabled vehicle, he was

hit by a Ken Small Industries (KSI) truck driven by Danny Willis.  Rodriguez then sued Willis and KSI for negligence causing injury.

During the trial, numerous experts testified about Rodriguez's injuries from the accident, his prior injuries predating the accident, whether his injuries were caused by Willis, whether any medical procedures were necessary, and whether Rodriguez or AC Pipe could and should have done more to prevent the accident.  The judge ultimately instructed the jury to consider whether Rodriguez and AC Pipe were comparatively at fault for the collision.[1]

The jury found Willis, and by extension KSI,[2] negligent and responsible for injuring Rodriguez.  It also found Rodriguez and AC Pipe were equally at fault for the accident.

On appeal, Rodriguez argues the trial court erred in certain evidentiary rulings and claims comparative-fault instructions were not appropriate.  We disagree and affirm the judgment.

## BACKGROUND

An AC Pipe employee was driving a company truck on Lerdo Highway when it became disabled.  He pulled the vehicle over onto the paved shoulder and Rodriguez, a supervisor at AC Pipe, traveled to the scene.

After arriving, Rodriguez and a colleague stood on the paved shoulder and tried to refuel the disabled vehicle.  They admitted to informally planning to watch for "traffic" as they stood on the paved shoulder.  Moments later, Rodriguez was struck by Willis who was driving a KSI truck.

---

[1] Throughout the opinion, we interchangeably use the terms accident and collision.

[2] Counsel stipulated KSI "will be responsible for any negligence of … Willis." There was not a separate finding regarding KSI.

After the collision, Rodriguez underwent surgery on his "right shoulder," "left arm," "teeth" and "jaw," and "lower back …."  He also suffered psychological trauma.[3]

Several experts testified about Rodriguez's injuries, their cause, and the collision itself.  Some experts pointed out the AC Pipe employees, Rodriguez included, failed to utilize cones and hazard lights to prevent a collision.

The jury found Willis responsible for Rodriguez's injuries, but found Rodriguez and AC Pipe at fault, too.  The jury awarded $850,000 in damages and apportioned fault at 50 percent to Willis, 30 percent to AC Pipe, and 20 percent to Rodriguez.

## DISCUSSION

There are several issues raised but they fall into two categories: evidentiary rulings and jury instructions.  Rodriguez contends the trial court erred "in sustaining objections that excluded the causation and future damages opinions" from his treating physicians "based on the fact that they were non-retained" experts.  He also believes the trial court impermissibly admitted "case-specific hearsay …."

As for the jury instructions, Rodriguez asserts the comparative-fault instructions were all improper.  Finding no error in either category, we affirm the judgment.

## I.  Evidentiary Issues

Rodriguez raises two distinct evidentiary claims.  First, did the trial court improperly limit the treating physicians from offering opinions on causation solely because they were nonretained experts?  Second, did the court wrongly admit case-specific hearsay into evidence?

Willis argues the trial court's evidentiary rulings were correct.  Specifically, he contends the trial court limited treating physicians from offering opinions because they

---

[3] For example, Rodriguez testified he is not "[m]entally" fit to work because he does not "trust [him]self" and "ha[s] issues with forgetfulness and decision making."

3.

lacked sufficient foundation and the alleged hearsay testimony was "admissible and …

properly introduced …." We agree with Willis.

## A. Causation Testimony

Two physicians who treated Rodriguez for injuries testified in the case—they were

not retained for purposes of litigation.[4] The trial court did not allow these two physicians

to opine Rodriguez's injuries were caused by the accident in issue. Others, specifically

retained for trial, were allowed to testify the injuries were caused by the accident. We

find no error in the rulings.

### i. Additional Background

The first treating physician opined Rodriguez's shoulder, neck, and back injuries

were caused by trauma. When asked *which* traumatic event caused the injuries, the trial

court sustained an objection. The court later explained its ruling was due to it believing

the subject was "beyond the scope of a nonretained expert" and, because "the record

indicate[d the] only source of information" for the opinion was "provided by the patient,"

there was "an insufficient foundation …."

The second treating physician opined Rodriguez's shoulder injury was caused by

the accident underlying the case.[5] He was then asked if an elbow injury was also caused

---

[4] "A treating physician," or nonretained expert in this case, "is not consulted for
litigation purposes, but rather is qualified to testify about the plaintiff's injuries and
medical history because of his or her underlying expertise as a physician and his or her
physician-patient relationship with the plaintiff. A retained expert, on the other hand, is
engaged for the purpose of forming and expressing an opinion in anticipation of the
litigation based at least in part on information obtained outside the physician-patient
relationship, for the purpose of the litigation rather than the patient's treatment."
(*Dozier v. Shapiro* (2011) 199 Cal.App.4th 1509, 1520.) A treating physician and a
retained expert are subject to differing disclosure rules. (*Id.* at pp. 1520-1521.)

[5] For clarity, this treating physician at least partially tied Rodriguez's injuries
directly to the accident. The trial court aptly described the record in this regard as
follows: "Some of the other witnesses got that opinion in sometimes because it was
slipped in quickly, sometimes because there was no objection, but that doesn't change the

by the accident, he replied, "Yes, I believe it was caused by the injury." When counsel attempted to clarify the answer, the trial court sustained an objection. The court explained it sustained the objection because the subject "exceed[ed] the scope" and the physician lacked "foundation to render that opinion."

At least six other witnesses linked, in whole or in part, Rodriguez's various injuries to the accident. The parties later revisited the objections, and the trial court explained it did not exclude the treating physicians from testifying to causation simply because they were nonretained experts. Rather, the court clarified it believed the treating experts lacked foundation, i.e., Rodriguez's statement, in essence, that the "injuries were caused by a collision with a truck" was not a "sufficient foundation" upon which to render an opinion.

### ii. Analysis

" 'We review a trial court's decision to admit or exclude evidence "for abuse of discretion, and [the ruling] will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice." ' " (*People v. Nieves* (2021) 11 Cal.5th 404, 445; *Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1078.) "An abuse of discretion is only demonstrated when no reasonable judge could have made the challenged order." (*In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 374.) "We may affirm on any correct ground, regardless of the grounds relied upon by the trial court." (*Boschetti v. Pacific Bay Investments Inc.* (2019) 32 Cal.App.5th 1059, 1065.)

Rodriguez correctly points out "[a] treating physician is a percipient expert, but that does not mean that his [or her] testimony is limited only to personal observations. Rather, like any other expert, he [or she] may provide both fact and opinion testimony."

---

fact that I have made a determination that [the treating physicians were] not qualified to give that opinion …."

5.

(*Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 35.)  Nonetheless, an expert's opinion must still "assist the trier of fact …."  (Evid. Code, § 801, subd. (a).)

Here, the trial court excluded the two treating physicians from testifying the collision caused Rodriguez's injuries.  The ruling was correct.  To the extent the trial court believed those opinions were insufficiently founded upon Rodriguez's statements alone, it did not abuse its discretion.

The opinions at issue would have simply related Rodriguez's own conclusions, conclusions he himself was free to testify to.  "[A]n expert opinion is worth no more than the reasons and facts on which it is based."  (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510.)

At bottom, a trial court is vested with the discretion to determine whether a patient's statements alone are sufficient foundation for an expert to opine about causation in a direct, as opposed to hypothetical, form.[6]  (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 ["Exclusion of expert opinions that rest on guess, surmise or conjecture [citation] is an inherent corollary to the foundational predicate for admission of the expert testimony: will the testimony assist the trier of fact to evaluate the issues it must decide?"]; *Belfiore-Braman v. Rotenberg* (2018) 25 Cal.App.5th 234, 247 [a "court [is] required to assure that the foundational predicates for admission of any expert testimony were met, such that it would assist the trier of fact in evaluating the issues to be decided."].)  A direct opinion tying the collision to the injuries does not necessarily assist the jury.  Arguably, it simply informs the jury on how to decide a key element in dispute.  We cannot conclude no reasonable judge would similarly rule.

---

[6] Aside from eliciting testimony from the treating physicians that Rodriguez's injuries were consistent with trauma, Rodriguez did not elicit a separate opinion from these witnesses that the injuries were consistent with a hypothetical collision involving a motor vehicle.

In sum, contrary to Rodriguez's claim, the trial court here did not exclude causation testimony simply because the treating physicians were *not* retained experts. In any event, several experts testified to direct causation between the collision and Rodriguez's injuries. There was no error, let alone any prejudice.[7] (*Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799 [appellant bears burden to establish prejudicial error].)

## B. Hearsay

Rodriguez contends the trial court permitted cross-examination in violation of *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). Specifically, he argues 1) an expert witness "was read verbatim the notes of a … physician's assistant," 2) the expert "was cross-examined at length with specific statements [made] by … Rodriguez" and contained within medical records, and 3) the expert "was cross-examined based on case-specific hearsay" describing Rodriguez's prior back injury, even though that witness "never testified." Willis contends there was no error, and we agree.

### i. Additional Background

Rodriguez retained a physician to testify at trial. This retained physician testified Rodriguez's neck, shoulder, and back injuries were caused by the accident when Willis hit Rodriguez on the highway. On cross-examination, the physician acknowledged Rodriguez suffered a prior back injury. Indeed, he had read and considered another physician's report on that injury, personally noting the prior diagnosis—a herniated disk—in his own report prepared for this trial.

Rodriguez objected to the testimony, i.e., a separate physician's report describing a prior back injury. The objection was overruled, with the trial court noting "[i]t's an

---

[7] Rodriguez asserts he was "grossly prejudiced" because "his treating surgeons" were "the least-biased, most objective medical witnesses in the case …." His assertion invites far too much speculation.

exception to the hearsay rule because it's something the doctor relied upon" and offered to instruct the jury accordingly.[8]

Moments later, the physician was read a note describing Rodriguez's statements relating "significant improvement" and "no neck pain …." Because the note's author was not testifying, Rodriguez objected. The objection was overruled.

Much later, another physician retained to testify at trial explained Rodriguez's "psychiatric problems" were "caused" by the collision in issue. He was cross-examined via numerous other medical records in which Rodriguez allegedly denied any psychiatric issues. Rodriguez, again, objected.

Ultimately, the trial court held a hearing on the entire matter. The court concluded statements allegedly made by Rodriguez were admissible, subject to a motion to strike, because it believed "those statements" were, one way or another, "going to come in[to]" evidence. The court subsequently "den[ied] the motion without prejudice" to its renewal.

Eventually, Rodriguez testified he injured his back many years prior to the accident in this case. He sought treatment for it and believed, based on that treatment, he "had two crushed disks" in his lower back. The physician who treated Rodriguez for his prior back injury also testified in the case.

### ii. Analysis

"When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay." (*Sanchez, supra,* 63 Cal.4th at p. 686.) "There is a distinction to be made between allowing an expert to describe the type or source of the matter relied upon as opposed to presenting, as fact, case-specific hearsay that does not otherwise fall under a statutory exception. [¶] What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven

---

[8] Rodriguez declined the special instruction.

by competent evidence or are covered by a hearsay exception." (*Ibid.*) Additionally, if challenged, "an expert must establish that the basis for his or her opinion is sufficiently reliable such that it 'reasonably may be relied upon' by experts testifying on the same subject." (*People v. Veamatahau* (2020) 9 Cal.5th 16, 32 (*Veamatahau*).)

"Although *Sanchez* was a criminal case, its intention was to 'clarify the proper application of Evidence Code sections 801 and 802, relating to the scope of expert testimony.' [Citation.] Thus, the *Sanchez* rule concerning state evidentiary rules for expert testimony applies in civil cases." (*In re Marriage of Lietz* (2024) 99 Cal.App.5th 664, 673.)

Notwithstanding *Sanchez,* " '[i]t is common practice to challenge an expert by inquiring in good faith about relevant information, including hearsay, which he [or she] may have overlooked or ignored.' " (*People v. Townsel* (2016) 63 Cal.4th 25, 56 (*Townsel*).) "The *Sanchez* rule barring an expert from relating case-specific hearsay should not be understood to bar cross-examination which seeks to undermine an expert's opinion by showing that facts relied upon are suspect or that facts inconsistent with the opinion were ignored." (Simons, Cal. Evidence Manual (2023) § 4.31, p. 373.)

The trial court's rulings in this case were consistent with the law. Although its stated reasons were arguably imperfect, the rulings were not in error. The questions and answers at issue here were clearly designed to undermine the respective expert opinions. For example, questions were asked to ensure physicians offering opinions favorable to Rodriguez had first properly considered Rodriguez's prior back injury. Although a case-specific fact, Rodriguez himself admitted he previously suffered a prior back injury, sought treatment, and believed he suffered "two crushed disks" in his lower back. Moreover, the physicians who treated Rodriguez's prior back injury and ordered and reviewed the test results during his treatment also testified at the trial, albeit not the physician performing or reporting the rest.

As for statements allegedly made or omitted by Rodriguez, and documented in medical records, pertaining to pain, improvement, or psychology, Rodriguez was available to confirm, deny, or explain the evidence. Ultimately, the trial court believed the evidence underlying that cross-examination would enter the record and allowed Rodriguez to later move to strike the relevant testimony. He did not. The fact he chose not to move again to strike the testimony does not convert the trial court's evidentiary ruling into error.

In conclusion, the cross-examination objected to in this case did not violate *Sanchez*. Instead, it was appropriate because it was designed to, and did, test the reliability of the opinions offered at trial. (*People v. Henriquez* (2017) 4 Cal.5th 1, 26 ["the credibility of an expert witness may be challenged based on the sources of information the expert relied on to form his or her opinion."]; *Veamatahau, supra,* 9 Cal.5th at p. 32; *Townsel, supra,* 63 Cal.4th at p. 56.) Rodriguez has not proven the court erred in its evidentiary rulings.

## II. Jury Instruction Issues

The trial court instructed the jury with various comparative fault principles. Rodriguez asserts neither the evidence nor the law supported these instructions. We believe the instructions were properly supported by fact and law.

### A. Additional Background

Multiple experts testified about their conclusions in reconstructing the accident and what could have been done to avoid it. One expert believed Rodriguez was nearly "a foot or a little less than a foot" "from the fog line" when he was hit by Willis. He also believed "flashers," or hazard lights, were important to activate in this situation, and stated Rodriguez should have activated them when he arrived on scene. He expressed similar opinions about using cones, and noted AC Pipe had "no protocol … to follow when company vehicles became disabled." He concluded it was unsafe to be "so close to the fog line" unless "you have blinkers on, if you have your cones out." Another expert

10.

testified the disabled vehicle was "[t]wo and a half feet" from the "[s]houlder line" or "white line …."

An AC Pipe employee testified the disabled vehicle should have had its "emergency flashers" engaged. He also believed cones, which were actually available in the vehicle, should have been placed on the road. He specifically noted Rodriguez, as a supervisor, should have directed using lights and cones but, again, there was no company protocol dealing with disabled vehicles.

Regarding the accident, Willis testified he observed the disabled vehicle with people standing around it from approximately "five blocks away[.]" As he approached the disabled vehicle and was about to pass it, Rodriguez "stepped out" into his "line of fire" and "[he] assumed [he] was going to hit him." Willis "veered from [his] thinking [he] was going to hit [Rodriguez,] [b]ut when [he] veered, there was a [large] truck coming [his] way …." Due to the oncoming truck, Willis "jerked back to the right" and he hit Rodriguez, acknowledging he "[o]bviously" left the travel lane to some extent.

Later, as the parties discussed jury instructions, Rodriguez objected to comparative fault because, "even if there [was] comparative fault found," it was "going to be very minor compared to the fault of [] Willis." The trial court responded, "[T]hat's an argument best directed to the jury." Rodriguez also objected to another comparative fault instruction, arguing there was "no causal nexus between anything that [he] did that day and any of the harm that resulted." For example, he argued "[t]here [was] no evidence … that the failure to place cones and flashers caused [] Willis to leave his lane," especially because Willis saw people and the disabled "vehicle, clear as day, five blocks away."

The parties also clashed over negligence per se instructions. Willis sought to prove Rodriguez was negligent per se because he violated laws by standing in the roadway without a crosswalk (Veh. Code,[9] § 21954, subd. (a)) and failing to activate

---

[9] Undesignated statutory references are to the Vehicle Code.

hazard lights on the disabled vehicle to serve as a "warning" (§ 25251, subd. (b)). He also sought to prove the driver of the disabled vehicle—an AC Pipe employee—was negligent per se and caused harm to Rodriguez because he failed to engage the hazard lights and to place "warning devices" as required by federal law. (49 C.F.R. § 392.22, subd. (a).)

The trial court ultimately did instruct the jury with each challenged comparative-fault instruction. The instructions essentially informed the jury Rodriguez, or the AC Pipe employee, was partially responsible for Rodriguez's injuries if either was negligent, and that negligence was a "substantial factor in causing … harm." The court also instructed the jury "the failure to use extreme caution" in "dangerous activities" "is negligence." As noted, the jury did find Rodriguez and AC Pipe were jointly 50 percent at fault for the accident.

## B. Analysis

On appeal, Rodriguez restates his trial court arguments. He claims the evidence did not support comparative fault because it was not "reasonably foreseeable" Willis would "veer out of his lane" and strike him, and it was not a dangerous situation. He also argues the instructions based on statutory violations were not supported by law because he was not standing on the "roadway," as defined in the Vehicle Code, cones and hazard lights were immaterial to the accident, and the hazard lights were not engaged because the vehicle's disability also disabled those lights.

"Upon request, a party in a civil case is entitled to correct, non-argumentative jury instructions on every theory of the case that is supported by substantial evidence." (*Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 526.) "We review de novo the question of whether the trial court's instructions to the jury were correct." (*Ibid.*) Here, we conclude the general comparative fault and negligence per se instructions were all proper.

### i. General Comparative Fault

Rodriguez claims comparative fault instructions were improper because it was "unforeseeable" "that Willis would suddenly depart his lane, drive several feet over the white shoulder line, and strike him." We disagree.

"That drivers may lose control of their vehicles and leave a freeway for the shoulder area, where they may collide with any obstacle placed there, is not categorically unforeseeable." (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 768.) "[T]hat a vehicle parked by the side of a freeway may be struck by another vehicle leaving the freeway, resulting in injury to either vehicle's occupants, is clearly foreseeable. Drivers are supposed to control their vehicles and keep them on the traveled roadway, but common experience shows they do not always do so. Freeway drivers may be intoxicated, distracted, blinded by the weather or sun, sleepy or sick, and for any of these reasons or others may drive off the roadway. Mechanical problems with their vehicles can also force motorists to suddenly leave the freeway. If they do so at freeway speeds and collide with another vehicle parked alongside the road, they are likely to be injured or injure other occupants of the vehicles, or both. This general foreseeability is reflected in the Official Reports, in that numerous decisions have involved collisions between vehicles leaving a highway and vehicles or other obstacles on the roadside." (*Id.* at p. 775.)

This case is no exception. Rodriguez stood nearly one foot from the line and himself admitted it was necessary to watch for oncoming traffic.

As for whether the facts in this case involved a dangerous activity or item relative to the extreme caution instruction, Rodriguez only argues "driving a vehicle is not so inherently dangerous as to always require extreme caution." But this case does not involve driving a vehicle. Rather, it involves attempting to fuel a vehicle while standing one foot away from highway traffic. Put simply, the evidence justified the instruction and the jury was entitled to consider it.

13.

Similarly, Rodriguez complains cones and hazard lights were immaterial to the accident because Willis testified he "clearly saw [Rodriguez] at all times for minutes leading up to the collision …." The evidence in the record, however, included an opinion cones and hazard lights were effective notwithstanding an oncoming driver's clear vision. Again, the jury was entitled to credit this evidence and to consider an appropriate instruction.

### ii. Negligence Per Se

The negligence per se instructions were based on violating the Vehicle Code and Federal Regulations. The first instruction recited section 21954, which states "[e]very pedestrian upon a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway so near as to constitute an immediate hazard." (§ 21954, subd. (a).) The Vehicle Code defines "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel."[10] (§ 530.)

The second negligence per se instruction related section 25251, which provides "[t]urn signal lamps shall be flashed as warning lights whenever a vehicle is disabled upon the roadway … if … the turn signal lamps were not rendered inoperative by the event which caused the vehicle to be disabled." (§ 25251, subd. (b).) Finally, Federal Regulations require "the driver of [a] stopped commercial vehicle," if "stopped upon the traveled portion of a highway or the shoulder of a highway," to "immediately activate the vehicular hazard warning signal flashers and continue the flashing until the driver places the warning devices required" by law.[11] (49 C.F.R. 392.22, subd. (a).)

---

[10] "Highway" is defined as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." (§ 360.)

[11] This instruction applied to the original driver, an AC Pipe employee, so long as that driver's failure was a substantial factor in harming Rodriguez.

These instructions are supported by the law. Primarily, Rodriguez asserts the statutes in issue do not apply because he was not standing in the roadway as defined by the Vehicle Code. He is incorrect.

Any "portion of a highway improved, designed, or ordinarily used for vehicular travel" is a roadway. (§ 530.) Contrary to Rodriguez's contention, there is no doubt the paved shoulder in this case was "improved" "for vehicular travel." Indeed, the shoulder in this case was used exactly as intended, for a disabled vehicle to pull away from traffic, and similarly for anyone responding to the scene to assist—exactly what Rodriguez did in this case, i.e., utilize the shoulder to arrive at the scene but not obstruct normal traffic. There is simply no other tenable argument.

The remaining instructions involving hazard lights were also proper. Rodriguez again claims the "failure to place cones or activate flashers" did not cause the accident. He also asserts the hazard lights were rendered inoperable by the vehicle's disability.

Testimony in the record indicated cones and hazard lights were beneficial, should have been used, and Rodriguez himself should have directed their usage. This evidence, if credited by the jury, supported instructions based on failure to follow laws mandating such usage. As for whether the hazard lights were inoperable, there is no evidence in the record describing the vehicle-in-question's actual disability, let alone a conclusive fact the hazard lights were rendered inoperable by that disability.[12]

### iii. Summary

In sum, the comparative-fault instructions were supported by both fact and law. There was sufficient evidence in the record justifying each instruction, and there is no question the laws the instructions were based upon fairly applied to this case.

---

[12] The trial court actually noted, during argument related to instructions, there was no evidence the lights were inoperative.

15.

# **DISPOSITION**

The judgment is affirmed.  Costs on appeal are awarded to respondents.  (Cal. Rules of Court, rule 8.278(a).)


                                                   SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


SMITH, J.

16.